## ALDRIDGE FRANKLIN V. THE STATE.

### *No. 626.   Decided March 6.*

**1. Attempt to Rape by Fraud—Indictment.**—In defining rape by fraud, the statute, Penal Code, article 531, declares, that "the fraud must consist in the use of some stratagem by which the woman is induced to believe that the offender is her husband, or in administering, without her knowledge or consent, some substance producing unnatural sexual desire," etc.  *Held*, that while it would be the better practice, in an indictment for attempt to commit rape, to set out the particular kind of fraud, viz., whether by personating the husband or administering some substance to the female, still, a general charge of attempt to rape by fraud is sufficient, and authorizes proof of either means.

**2. Same—Name of the Husband.**—Where an indictment for an attempt by fraud to commit rape alleges that the female is a married woman, this would authorize proof of the name of her husband, though his name is not set out in the indictment.

**3. Same—Substantive Crime.**—An attempt to commit rape is a distinct substantive offense (Penal Code, article 535), for which an indictment may be found, and a conviction had.  Following Melton v. The State, 24 Texas Criminal Appeals, 284.

**4. Continuance—Diligence.**—Where the defendant was in custody for the offense at the time the indictment was filed, on the 21st day of April, and did not have process issued for his witnesses until the 5th of November following, just three days prior to the trial, no excuse being shown for the delay, *Held*, the diligence was insufficient, and his application for continuance was properly overruled.

**5. Continuance—Motion for New Trial—Newly Discovered Evidence—Surprise.**—Where defendant's motion for a new trial was supported by the affidavit of an absent witness, for whom a continuance had previously been sought for the purpose of proving his good reputation as a law-abiding citizen, and the facts set out in the affidavit related entirely to matters which would go to contradict and impeach a State's witness, *Held*, that the motion was insufficient, in that it did not show that the evidence was newly discovered; nor that defendant had been taken by surprise at the testimony of the State's witness, and needed the testimony of his witness in rebuttal, and that the necessity therefor was for the first time apparent.

**6. Same—Newly Discovered Evidence—Diligence.**—In his application for continuance on account of the absence of his mother, it was stated, that on the evening before the night of the alleged offense, she, the mother, saw defendant and prosecutrix at her house in secret and private conversation.  In this witness' affidavit in support of the motion for new trial, the subject matter of the secret conversation between the defendant and the prosecutrix is fully disclosed; but it is not shown to be newly discovered evidence, nor is any excuse shown why it was not sooner discovered.  *Held*, that the affidavit was insufficient; and *Held*, *further*, that defendant, having been under indictment for this offense for sometime, ought certainly, by the exercise

of diligence, to have been able to ascertain all that his mother knew in regard to the charge against him.

7. **Attempt to Commit Rape—Gravamen of the Offense.**—In the offense of rape consummated by fraud, the fraud must go to the extent of inducing the woman to believe that the offender is her husband; while the gravamen of the offense of an attempt to commit rape depends not on the belief of the female that he is her husband, but upon his fraudulent acts in personating the husband, and it is not necessary that the overt act be the last proximate act to the commission of the offense attempted.

8. **Same—Evidence Sufficient.**—See evidence stated which, in the opinion of the court, is amply sufficient to support a judgment of conviction for an attempt to commit rape.

APPEAL from the District Court of Collin.    Tried below before Hon. J. E. DILLARD.

This appeal is from a conviction for an attempt to commit rape, wherein the punishment was assessed at two years' imprisonment in the penitentiary.

Omitting the formal commencement, the indictment is as follows: "That Aldridge Franklin, on or about the 8th day of October, one thousand eight hundred and ninety-three, and anterior to the presentment of this indictment, in the county of Collin, State of Texas, did then and there unlawfully, in and upon D. M. Pennington, a woman, make an assault with the intent then and there to commit the offense of rape upon the said D. M. Pennington, by then and there, without the consent of the said D. M. Pennington, attempting by force and fraud to have carnal knowledge of her, the said D. M. Pennington. And the grand jurors aforesaid, upon their oaths in said court, do further present, that the said Aldridge Franklin did then and there, with the intent then and there to commit the offense of rape upon the said D. M. Pennington, attempt by force and fraud to have carnal knowledge of the said D. M. Pennington, without the consent of the said D. M. Pennington; and the grand jurors aforesaid, upon their oaths in said court, do further present, that the said Aldridge Franklin did then and there, with the intent then and there to commit the offense of rape upon the said D. M. Pennington, a married woman, attempt by fraud to have carnal knowledge of the said D. M. Pennington without the consent of the said D. M. Pennington, against the peace and dignity of the State."

Defendant made a motion to quash the indictment, for the following reasons, viz:

"1.   Because no offense against the law is charged therein, and the same is vague, indefinite, and uncertain.

"2.   Because the fraud relied on to constitute any of the offenses charged is not set out, and no specific act or acts of defendant necessary to constitute fraud are alleged, and the indictment only charges a conclusion, and contains no allegation that the woman was induced to believe that the defendant was her husband; and does not charge

that any substance producing any unnatural sexual desire or stupor, as prevents or weakens resistance, was administered to her without her knowledge; nor that the alleged offense was committed while she was under the influence of such substance.

"3. The indictment fails to allege the name of D. M. Pennington's husband, and defendant is entitled to know his name, in order to meet the issue raised as to whether or not D. M. Pennington was a married woman at the time of the alleged attempt.

"4. The indictment does not charge the commission of rape, and under the statute a man can not be convicted of an attempt to rape except when tried on an indictment which charges rape."

This motion to quash was overruled. The matters pertaining to defendant's application for continuance and subsequent motion to postpone the trial, after the return of his attachment for the absent witness Mrs. E. J. Franklin, his mother, and the affidavits of these witnesses in support of his motion for a new trial, are sufficiently stated in the opinion.

The case as made by the prosecution is fully developed by the following portions of the testimony of the prosecutrix, Mrs. D. M. Pennington, and the confessions of defendant to the witness E. P. Billington, on the day after the offense was committed.

The prosecutrix, Mrs. Pennington, testified, on her examination in chief, as follows: "On the night of October 8, 1893, I was awakened by some noise on the outside of the house, and thought it was my husband returning home. It sounded like some one cleaning their feet, or something being dragged over the floor. I called to my husband, saying 'Henry?' and no one answered. In a few moments I heard the noise again inside the house, about the foot of my bed. I then said, 'Henry.' And the person at the foot of my bed, who was the defendant, said 'Hu!' in a sort of a grunt. Defendant was then pulling off his shoes and coat. He then got up, with his shoes and coat off, and came around to the north side of my bed, where my baby's cradle was, and before he got to the cradle I said again, 'Henry, is that you?' and he said, 'Uh hu' [meaning yes]. About this time, as he was moving the cradle away, I discovered by his voice and by the light shining through the window that it was not my husband, but the defendant. I then said, 'No, it is not Henry; no such a thing; you get out of here.' He kept on getting in the bed, and laid down on it; caught hold of my arm, and said he had come down to have a little fun. He held my arm as tight as he could. While defendant was moving the cradle to get in my bed, I reached up over the head of my bed to get a match to strike. When he caught hold of my arm I jerked loose from him; told him to get out of there, and ran out into the yard. Defendant followed me out into the yard. As I was going out of the house I looked back and saw him coming, with his coat and shoes in his hand. When I got out in the yard I hallooed as loud as I could for Mrs. Franklin, who lived closest to us, and about 200 yards

off. I called her several times. When defendant was coming out of the house he said, 'Come back and I will tell you who I am;' and I replied, 'I know who you are, sir; you get out from here.' When defendant got out of the house, I ran back to the house and slammed the door and fastened it. Defendant then said, 'If you want to tell this you can do it, but I'll tell you what I'll do.' I said to him, 'You go off from here.' Defendant then went around to the chimney corner and stood there a few minutes. I then lit the lamp in the house, and put on my clothes. This occurred about 2 o'clock in the morning. I looked at the clock after I had lit the lamp and come back in the house. Defendant then went off and came back about 5 o'clock in the morning; came around the house, and laughed, and said: 'I am well; how are you?' I said to him, 'You go on away.' Defendant then went off, and the next time I saw him was just about sunrise, when my husband had come home. Defendant was then on horseback, riding in a gallop, and going west. There was no one at home that night but me and my little children; my husband was gone over to cousin John Hurse's, to sit up with the sick. I told my husband about it as soon as he came back. I was telling him about it when defendant rode by on his horse. This all happened in Collin County, Texas.''

E. P. Billington testified: ''I remember the time of the trouble between Mrs. Pennington and defendant. I saw defendant the day of the difficulty, on Sunday, and after it occurred. Allen Barrington was with him. I had been to defendant's mother's after a pair of mules which I had a mortgage on. I met defendant and Allen Barrington south of Snow Hill about 200 yards. He was going towards Fayburg. I asked him where he was going, and he said home. I said to him, 'Do you know the officers and citizens are after you?' and he said, 'No; what have I done?' Just then several people came up, returning from singing, along the road, and I told him to come up to my barn, I wanted to talk with him; and we went up there. My son Tommy Billington, Allen Barrington, and Jim Jones were along. I said to defendant Aldridge, 'Do you know that Mrs. Pennington says that you were in her house last night? Tell me the truth about it. Understand, she will swear positively that it was you.' Defendant said he was there. I asked him how he got in the house. He said he pushed the door open and walked in. He said that she said, 'Henry, is that you?' and he replied to her, 'Yes'—trying to answer as much like Henry as he could. That he afterwards told her it was not Henry, but some one that could do her more good than Henry. He said he grabbed her by the arm, and she broke loose. He said that she said she knew who he was then. That she ran out of the door, and he followed her. He said he did not go there to rape her. He said she had thrown out hints to him. I pinned him down, and asked him how and what hints she had thrown out. I asked him if she had ever led him to believe that she was not a lady, and he said no, that he reckoned that he was mistaken about the hints; that she

did nothing that was not within the bounds of a lady.   I asked him
if he had ever been there before or had intercourse with her, and he
said no.   But he created the impression on my mind that he had.
The defendant and I had been good friends.   I was an elder of the
church of which he was a member.   Defendant, at the time of our
conversation, had a pistol in the waistband of his pants.   He and
Allen Barrington then made arrangements for him to leave the coun-
try that night.   Barrington was to meet him that night at a certain
place near a certain bridge.   Defendant started off, but after he had
gone a little ways he turned around and came back, and said, 'By
God, he didn't have to run off; that he had done nothing to run off
for.'   I then told them they had best give me their pistols; that the
officers would arrest them with them on.   I advised the defendant
before this to give up.   They turned the pistols over to me, and
defendant said he was going to Farmersville to give up."

Cross-examined, he said:   "I told defendant it would be best for
him not to have a pistol.   Defendant had a good reputation for being
a law-abiding citizen up to the time he got into this trouble."

Defendant fled from the neighborhood the morning after the occur-
rence and was not arrested for ten or twelve days after.   Defendant's
witnesses, the two Barringtons, testified to having seen Mrs. Penning-
ton several times sitting in defendant's lap, and to defendant's going
into her house at night on several occasions, and remaining sometime,
when her husband was absent.   Several witnesses testified to the good
reputation of defendant as a law-abiding citizen prior and up to this
occurrence.

That portion of the charge of the court defining "fraud," which
was complained of by defendant as being erroneous, is set out in the
opinion.   Defendant's refused special instructions were as follows:

"5.  If you believe defendant attempted to have carnal knowledge
of D. M. Pennington, but if at the very time of such attempt she
knew he was not her husband, and that defendant also knew at that
very time that she was aware of the fact that he was not her husband,
then the defendant would not be guilty of an attempt to rape by fraud.

"6.  Before you can convict the defendant of an attempt to rape by
fraud, you must find and believe from the evidence that defendant
used some stratagem by which D. M. Pennington was induced to be-
lieve that the defendant was her husband.

"7.  If D. M. Pennington did not believe that the defendant was
her husband, then the proof of fraud would not be sufficient, and the
defendant would not be guilty of an attempt to rape by fraud.

"8.  In order to convict of an attempt to rape by fraud, you must
believe from the evidence that the defendant used some stratagem;
that is, some artifice, plan, scheme, or trick, upon D. M. Pennington,
and the stratagem must have induced her to believe that defendant
was her husband."

*Abernathy & Beverly*, for appellant.—1. (1) The court erred in overruling motion to quash the indictment. The indictment should allege the facts necessary to constitute fraud, and should give the name of the prosecutor's husband, and should set forth the acts constituting the attempt.

(2) The statute which makes the attempt punishable authorizes a conviction only on the trial of an indictment for rape, and unless there is an indictment for rape there can be no conviction for the attempt.

(3) The indictment for an attempt is fatally defective in failing to allege that the offense does not come within the definition of an assault with intent to rape. Willson's Crim. Stats., art. 535.

The statute concerning stratagem protects married women only. King v. The State, 22 Texas Crim. App., 652.

The facts constituting fraud must be alleged. Bains v. Mensing Bros. & Co., 75 Texas, 201.

2. The court erred in overruling defendant's applications to continue and postpone the trial. Payne v. Cox, 13 Texas, 480; Price v. Lauve, 49 Texas, 81.

3. The court erred in the charge given to the jury on the question of attempt to rape by fraud, because the evidence is not sufficient to raise that issue, and because the definition of fraud as therein given is not correct, and does not require the jury to find that the woman, Mrs. Pennington, believed the defendant to be her husband. It is on the weight of the evidence, and authorizes the jury to convict if defendant merely attempted to perpetrate the fraud.

4. The court erred in refusing the fifth, sixth, and seventh special instructions asked by defendant. Willson's Crim. Stats., arts. 528, 531, 535; Mooney v. The State, 29 Texas Crim. App., 260; King v. The State, 22 Texas Crim. App., 652.

5. The court erred in overruling defendant's motion for a new trial. Mrs. E. J. Franklin, in her affidavit attached to and made a part of the motion for a new trial, stated, that she was attached for defendant, and could and would have attended the trial, but was sick and unable to travel; and among other things, would have testified that D. M. Pennington was at her house the evening before the alleged assault, and on that occasion Mrs. Pennington and defendant had a conversation which witness did not hear; that she was at home all that night, and never heard Mrs. Pennington make any alarm or outcry; that a person could stand in her door and converse with one in Pennington's yard; that witness was at Pennington's in the morning and in the afternoon of the day of the alleged offense, and asked D. M. Pennington what occurred, and she stated that she was asleep when defendant entered her bed and put his arms about her, and did not know he was in the room till then; that she awakened and smelled his breath, and knew it was not her husband.

This contradicted the testimony of Mrs. Pennington, when she says she was awakened by a noise outside the door, and asked if it was

Henry, and defendant came in, etc., and contradicts the idea that defendant was endeavoring to pass for the woman's husband.

E. P. Billington, a witness for the State, and who had been recently in a law suit with defendant, testified, that "defendant said he was there, pushed the door open and went in; that she said, 'Henry, is that you?' and he said, 'Yes,' trying to answer as much like Henry as he could."

The affidavit of J. A. Jones, attached to motion for new trial, shows, that Jones was present and heard the conversation in which Billington claims defendant made the statement just above quoted, and that defendant never at any time in said conversation, either in the road or at the barn, stated that he tried to fool D. M. Pennington, and never stated that he tried or attempted to make her believe he was her husband, and made no statement substantially to that effect. Schultz v. The State, 20 Texas Crim. App., 318; Jackson v. The State, 23 Texas Crim. App., 188.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was tried and convicted in the District Court of Collin County, at the October Term, 1894, of the offense of attempt to rape by fraud, with his punishment assessed at confinement in the penitentiary for a term of two years, and from the judgment and sentence in the case he prosecutes this appeal.

The appellant made a motion to quash the indictment below, which was overruled by the court, and he assigns this as error. The indictment was in three counts, but the conviction being under the last, it is only necessary to quote that, which is as follows: "And the grand jurors aforesaid, upon their oaths aforesaid, do further present, that the said Aldridge Franklin did then and there, with the intent then and there to commit the offense of rape upon the said D. M. Pennington, a married woman, attempt by fraud to have carnal knowledge of the said D. M. Pennington." The points made by appellant are, (1) that the indictment should allege the facts necessary to constitute the fraud; (2) that the name of the prosecutrix's husband should be set out.

With reference to the first proposition, it is true in civil proceedings, as insisted by appellant, where fraud is relied on as a cause of action or defense, it is not enough simply to charge fraud; the fact constituting the fraud must be set out. But this rule is not believed to be the same in criminal proceedings; at least, it is not of general application. Of course, there may be cases where this would be necessary. In all cases of theft it is sufficient to state that the act was fraudulently done, and this authorizes proof of a variety of acts constituting the fraudulent intent. And even where the theft of property is by means of a false pretext, the pretext need not be averred, but the party can be convicted under an ordinary indictment for theft. Morrison v. The State, 17 Texas Crim. App., 37. And in burglary, it is sufficient to

allege that the entry was by fraud, without stating the character of fraud or the facts that constitute the fraud.   Neiderluck v. The State, 23 Texas Crim. App., 38.   And it is believed that the same rule is applicable in a case of rape or attempt to rape, and such has been the course of practice in this State.   King v. The State, 22 Texas Crim. App., 652; Milton v. The State, 23 Texas Crim. App., 204; Melton v. The State, 24 Texas Crim. App., 286.   If this be the rule in the cases cited, much more should it be the rule in a case of this character, where the fraud can only be of the character named by the statutes.   Our statute, in defining the offense of rape by fraud, defines the fraud which will constitute such offense, as follows:   "The fraud must consist in the use of some stratagem by which the woman is induced to believe that the offender is her husband, or in administering without her knowledge or consent some substance producing unnatural sexual desire," etc.   Penal Code, art. 531.   An attempt is an endeavor to accomplish a crime carried beyond mere preparation, but falling short of the ultimate design in any part of it. Lovett v. The State, 19 Texas, 174.   While it would be better practice to at least set out enough in the indictment to indicate which particular kind of fraud the prosecution relied on, whether by personating the husband or by administering some substance to the female, yet in our opinion a general indictment charging an attempt to rape by fraud would authorize the proof of either means.

As to the objection urged that the name of the husband should have been set out, we think the allegation is sufficient, to wit, that she was at the time a married woman, and this would authorize proof as to the name of her husband.

The objection that an indictment for an attempt to rape is not authorized, and that a party can only be prosecuted for said offense under an indictment charging rape, has been settled heretofore by this court against the appellant's contention.   Milton v. The State, 23 Texas Crim. App., 209; Melton v. The State, 24 Texas Crim. App., 286.

The appellant contends that the court erred in overruling his motion to continue or postpone the case.   He made a motion to continue when the case was called for trial for the absent witnesses Mrs. E. J. Franklin and J. A. Jones, which was overruled; and subsequently, during the progress of the trial, on the return of the writ of attachment by the sheriff of Franklin County into court, showing that Mrs. Franklin was sick and unable to attend, he renewed his application, and this too was overruled by the court.   The indictment in this case was presented and filed on the 21st of April, 1894, the defendant then being in custody. Process was issued in this case on the 5th day of November, 1894, just three days prior to the trial, and no excuse is shown for this delay. As to the original application, no sufficient diligence was shown. While the case was being tried, the sheriff of Franklin County returned the writ of attachment, showing that Mrs. Franklin was sick and unable to be brought into court, and the defendant then renewed

his application. It will be observed that the original motion was renewed, and in that it is stated, that defendant expected to prove by the witness Jones that defendant bore a good reputation in the neighborhood as a law-abiding citizen; and, as to Mrs. Franklin, that he expected to prove by her that defendant lived with her at the time of the alleged commission of the offense, one or two hundred yards from the house of the prosecutrix, D. M. Pennington, and defendant had so lived with her for a long time previous thereto; that witness had frequently seen the defendant and prosecutrix together alone in conversation, and that they were very intimate and friendly with each other; that defendant would frequently go to the house of the prosecutrix when there was no one there but her and her very small children, at her request; and that on several occasions he had gone and staid all night at the house of prosecutrix when there was no one but her and her small children there; and that on the evening preceding the night of the alleged offense, defendant was seen in secret and private conversation with the prosecutrix at witness' house.

On the motion for a new trial, defendant presented the affidavit of Jones, that he was present when the conversation between defendant and E. P. Billington, in the road, on the Sunday after the alleged offense, occurred, and that he heard the conversation between Billington and defendant in regard to the accusation against him; that said defendant stated at the time, that it was not the first time he had been in the house of D. M. Pennington; and that defendant never at any time stated that he tried to fool D. M. Pennington by trying to make her believe that it was her husband. This testimony was in contradiction of the testimony of Billington, who testified on the trial, that defendant had stated on the occasion referred to that he pushed the door open, and went in the room of Pennington, and that he then endeavored to make said Pennington believe he was her husband. The witness Mrs. Franklin's affidavit states that she will testify, that on the evening of the night before the alleged offense, Mrs. D. M. Pennington came to her house; that she invited the defendant to take supper with her; and that she also invited the defendant to spend the night with her, which he refused to do; that a person can stand in the yard of her (witness') home and converse with a person in the yard of the prosecutrix's home; that the witness was at home the night of the alleged offense, and did not hear Mrs. Pennington (the prosecutrix) call; that Aldridge Franklin, the defendant, left home early that night, and returned about daylight the next morning; that witness was at the house of the prosecutrix the next day, and that she told witness that she was asleep when defendant entered the bed and put his arms about her, and did not know he was in the room till then; that she awoke, and smelt his breath, and knew it was not her husband.

It will be seen from this statement of the contents of the motion for a continuance, and of the affidavits in connection with the motion for a new trial, that, as to the witness Jones, the testimony proposed to

be adduced from him is entirely different from his stated evidence on which a continuance was sought. It is not stated to be newly discovered testimony, nor is it shown that defendant was taken by surprise by the testimony of Billington as to what was said in the consultation between him and defendant, and that he for the first time was put upon notice as to what he would testify, or that he was surprised thereby, and required the testimony of Jones to rebut said testimony, and that the necessity therefor was for the first time apparent. This should have been done. And the same observation applies to a part of the testimony of Mrs. Franklin. In the application for a continuance it is stated, that on the evening before the night of the alleged offense, the witness Mrs. Franklin saw defendant and the prosecutrix at her house in secret and private conversation, but the subject of same is not stated; while in her affidavit for a new trial this secret conversation is disclosed, to wit, that the prosecutrix invited the defendant to take supper with her, and to stay all night with her. Yet it is not shown that this is newly discovered evidence, or, if newly discovered, no excuse is shown why it was not discovered sooner. The defendant is shown to have been under indictment for this charge for some time, and certainly he could have by any sort of diligence ascertained all that his mother knew in regard to the charge. The other facts proposed to be proven by Mrs. Franklin do not occur to us to be material. The distance from her house to the house of the prosecutrix could have been proven by other witnesses, and the fact that she did not hear Mrs. Pennington call that night is mere negative testimony. The witness Mrs. Pennington says she called to Mrs. Franklin, but she does not testify that she got any response from Mrs. Franklin.

The appellant further insists, that the case should be reversed because of the charge of the court in defining fraud, and in not requiring the jury to find that Mrs. Pennington believed that defendant was her husband. The court charged the jury: "If they believed that defendant did attempt through fraud to have and obtain carnal knowledge of the person of D. M. Pennington, without her consent and against her will, by then and there fraudulently entering the bedroom of D. M. Pennington, and in the night-time, then and there trying to deceive her by attempting to speak and act like her husband, Henry Pennington," etc. The court had previously defined fraud in the language of the statute, necessary to constitute a rape, to consist in the use of some stratagem by which the woman is induced to believe that the offender is her husband. Mark that the indictment here is for an attempt, and not for a consummated rape. In the latter the accomplishment of the purpose must be by fraud, and the fraud must be of such a character as imposes on the woman to the extent of inducing her to believe that the offender is her husband. If the practiced fraud should fall short of this, and the woman undeceived should consent, it would be no rape; or if she, discovering the imposition, should resist, and the offender, in the prosecution of his purpose, should over-

come her by assault and violence, it would then be rape by force. The charge here is an attempt to rape by fraud, and the gravamen of the offense does not depend on the belief of the female which apprehends a consummated rape, but on the fraudulent acts of the defendant in personating the husband of the prosecutrix. While an attempt can only be made by an overt act done in pursuance and in furtherance of the design to commit the offense, yet such overt act need not be the last proximate act prior to the commission of the offense attempted.

The defendant here knew of the absence of the husband of the prosecutrix, and he went from his house, near by to her home, and entered her bedroom. The prosecutrix, hearing a noise in the room, was awakened, and said, "Is that you, Henry?" and defendant responded, "Yes," or to that effect, and began pulling off his clothes. After getting his coat and shoes off, he came round the bed near where the prosecutrix's babe was sleeping, and she called again, "Is that you, Henry?" (meaning her husband) and he again responded in the affirmative, but as he moved around the cradle, the prosecutrix discovered by his voice and the light shining through the window that it was not her husband, and she about the same time recognized the person as the defendant, and she then said, "It is not Henry. You get out of here." Defendant persisted, and got in bed with the prosecutrix, and caught her in his arms, and insisted on having carnal knowledge of her, but she jerked loose from him and ran out in the yard. As she ran out of the house, defendant said to her, "Come back, and I will tell you who I am;" but she replied, "I know who you are." This was substantially the testimony of the State as to the attempt, and to our minds, if an attempt to commit a rape in personating the husband of a woman by the use of some stratagem intended to mislead and deceive the woman into the belief that the party is her husband can be shown, under our statutes, the facts of this case clearly make out such a case, and the charge of the court was pertinent and responsive to the facts proven, and in our opinion, the contention of the defendant is without any basis to support it.

While the remarks of the counsel may be subject to some criticism, yet they are not of that character to require a reversal of this case.

The judgment is affirmed.

              *Affirmed.*

Judges all present and concurring.