## RUSS RALEIGH v. THE STATE.

### No. 3191. Decided June 24, 1914.

**1.—Robbery—Evidence—Rebuttal—Common Law Rule.**

Where, upon trial of robbery, the defendant testified that he did not beat or bruise the party alleged to have been injured, there was no error in permitting the State in rebuttal to show that he did do so; besides, the common law rule as regards testimony in rebuttal is no longer in force in this State, and material testimony may be introduced at any time before the argument is closed if it is necessary to a due administration of justice.

**2.—Same—Names of Witnesses on Indictment.**

. Where the defendant did not make any effort in limine to have the names of the State's witnesses indorsed on the indictment and did not show any surprise, etc., there was no error on this ground. Following Fehr v. State, 36 Texas Crim. Rep., 93.

**3.—Same—Continuance—Want of Diligence—Impeachment.** '

Where the defendant, in his application for continuance, did not show proper diligence and the alleged absent testimony would only tend to impeach a State witness, there was no error in overruling the application and motion for a new trial.

**4.—Same—Charge of Court—Objection—Simple Assault.**

In the absence of written objections to the charge of the court before the same was read to the jury, the same could not be considered on appeal, it not being disclosed that defendant was prevented from having a fair and impartial trial, and there was no error in refusing special charges; besides, there was no error in the court's charge and his failure to submit simple assault.

Appeal from the District Court of Jackson. Tried below before the Hon. John M. Green.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Rose & Sample,* for appellant.—On the question of overruling continuance: Sharp v. State, 61 Texas Crim. Rep., 247, 134 S. W. Rep., 333; Rushing v. State, 62 Texas Crim. Rep., 309, 137 S. W. Rep., 372; Cameron v. State, 57 Texas Crim. Rep., 316; Pressley v. State, 60 id., 102; Keys v. State, 60 id., 279.

On question of objections to the charge of court: Carr v. State, 55 Texas Crim. Rep., 352, 116 S. W. Rep., 591.

On question of voluntary payment of money on charge of robbery: Glenn v. State, 49 Texas Crim. Rep., 349, 92 S. W. Rep., 806; Fannin v. State, 51 Texas Crim. Rep., 41, 100 S. W. Rep., 916; Carr v. State, 55 Texas Crim. Rep., 352, 116 S. W. Rep., 591.

On question of not indorsing names of witnesses on indictment: Lindley v. State, 11 Texas Crim. App., 283.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at five years confinement in the penitentiary.

The State's evidence would show that Walter Robinson on the 23rd day of last December desired to go hunting, and carried with him two black dogs he claimed to own. That after getting to the hunting grounds he tied the dogs and was gathering wood to make a fire, having his gun in his left hand. While so engaged appellant, Hanks Kasha and Carl Tatum drove up in a buggy, jumped out and accused Walter Robinson of stealing the dogs of appellant. He denied it, and claimed the dogs as his own. Appellant commanded him to put down the gun, which he did, and then commanded him to come to him. He not moving fast enough appellant shot him, the load taking effect between the chin and groin, covering his chest and abdomen. Appellant again commanded Robinson to come to him and he did so; that appellant then struck him over the head with the gun, bending the barrel of the gun. Appellant also claimed one of the dogs tied to the fence, and accused Robinson of stealing his dogs, and demanded to know where the other one was. Robinson denied stealing the dogs, but appellant took the dog he claimed as his and compelled the negro through threats and

violence to pay him twelve dollars for the dog that he claimed and could not be found.

Appellant's testimony would tend to show that he owned one dog, and another had taken up at his house; that he also decided to go hunting on the 23rd, and went home to get his dogs and they were missing. Upon returning to town and stating to those who were going with him that his dogs were missing, a bystander told him about seeing Walter Robinson leaving town with two black dogs. He, Kasha and Tatum got in the buggy and went in search of the negro and the dogs, inquiring along the road. His testimony would show, as did that for the State, that the negro had stopped and tied the dogs as stated. Appellant says when he drove up the negro was in a dead tree top, and he ordered him to come to him, but instead of doing so the negro made a run for his gun, and picked it off the ground and pointed it at him, when he shot. That the negro then dropped the gun and came to him, and he asked him about his dogs. The negro first denied getting appellant's dogs, but appellant says he subsequently admitted he had gotten the dogs, and one had gotten away, and for which he offered to pay appellant twelve dollars, and that he accepted the money in payment for the missing dog. He denied striking the negro on the head with the gun, and denied beating and bruising him, saying he only shot him when the negro drew a gun on him. This is a sufficient statement of the two theories, without going further into details, only as may be required in passing on the bills of exception. After appellant had testified he did not beat or bruise the negro, and did not strike the negro on the head with the gun, the State in rebuttal was permitted to prove by Mr. Wofford that he passed along the road and saw the tallest of the three men strike the negro, and he heard the negro begging them not to kill him, saying, "O Lordy, for God's sake, boys, don't kill me"; that he drove on a piece and looked back and saw they had a rope around the negro's neck. Dr. Wells was permitted to testify that on the night of the 23rd of December he was called to see Walter Robinson, and after testifying about how he was shot, also stated that the negro had bruises on his chin made with a blunt instrument, and his scalp had a "pulp appearance" and looked like it was bruised or lacerated with some hard blunt instrument. Appellant objected to this testimony, claiming that it was not proper rebuttal testimony, but if admissible it went to prove the State's case in chief and should have been introduced before the State rested. The testimony was clearly admissible in rebuttal of the testimony of appellant that he did not strike or bruise the negro; that he did not threaten or frighten him, and the money was voluntarily given him by the negro. But if it had not been in rebuttal, the common law rule as regards testimony in rebuttal is no longer in force in this State, the statute providing that the court shall allow testimony to be introduced at any time before the argument is concluded if it appears that it is necessary to a due administration of justice. (Art. 698, White's Ann. Procedure.) This is a matter now within the sound discretion of the court, and if the testimony had not been in rebuttal, this record

would not disclose that the court abused his discretion in admitting the testimony at the time it was offered. Wright v. State, 37 Texas Crim. Rep., 146; Cook v. State, 11 Texas Crim. App., 19; Bittick v. State, 40 Texas, 117, and cases cited in subdivision 2 of section 766 of White's Ann. Procedure.

Appellant also complains that the name of Dr. Wells was not endorsed on the indictment, and he had no notice that he would be called as a witness. While it is true that article 432 of the Procedure provides, among other things, that the names of the witnesses upon whose testimony the indictment was found shall be endorsed thereon, yet in this record there is no proof that Dr. Wells was a witness before the grand jury, and it may be that the indictment was found upon the testimony of Walter Robinson and Carl Tatum alone. Anyway, if appellant desired to have the names of the witnesses endorsed on the indictment, he should have filed a motion requesting that it be done in limine. Having failed to do so, it is no objection to a witness offered by the State that his name had not been endorsed on the back of the indictment. (Fehr v. State, 36 Texas Crim. Rep., 93.) If appellant was surprised by the testimony, he should have asked leave to withdraw his announcement and moved to postpone the case.

Appellant also moved to continue the case on account of the absence of Norman Asbeck. He showed he had a subpoena issued to Jackson County, but the return of the sheriff was introduced showing that Asbeck was a transient person and did not reside in Jackson County. This was not contested by appellant. He also asked to be permitted to continue the case on account of the absence of Roy McDowell, for whom no process had been issued. To his motion for a new trial he attaches the affidavit of Roy McDowell, stating fully what he would have testified had he been in attendance on the trial. We hardly think the diligence sufficient in either instance, but to concede it was, the testimony sought would only tend to impeach State's witness Carl Tatum as to a part of his testimony, and corroborate him in other respects. They only desired to prove by him what Tatum had told them, not any fact as to the transaction that they personally knew. This evidence could only be for impeachment purposes, for if Tatum was not introduced as a witness, none of it would be admissible. Under such circumstances the court did not err in overruling the application for continuance, and in refusing to grant a new trial on account of the alleged newly discovered evidence of Roy McDowell. Franklin v. State, 34 Texas Crim. Rep., 203; Patton v. State, 58 Texas Crim. Rep., 231, 125 S. W. Rep., 24, and cases there cited.

This case was tried ·in March, 1914. The charge of the court as given was submitted to appellant's counsel, and they made no objection thereto in writing or otherwise; however, they did request several special charges. The law now is, that when the charge is submitted to counsel, if they have any objection to it, on the ground that it has failed to submit any issue made by the testimony, or has not submitted it full enough, or there is any affirmative error in the charge, or any omission,

or any other character of error, appellant's counsel shall call the attention of the court to such error by written objection, or such matter can not be reviewed on appeal, unless the record discloses it is such error as prevented defendant from having a fair and impartial trial. (Chap. 138, Acts 33rd Leg.) Under such circumstances, if there was no objection made to the charge, we hardly think we are authorized to consider whether or not any of the special charges should have been given, for this record would disclose a most fair and impartial trial, and the court in his charge submitted all issues made. However, if we should consider them, they present no reversible error. The first asked for peremptory instructions, and the court did not err in refusing it. Nos. 2 and 3 complain that the court did not submit the issue of simple assault. The evidence did not raise that issue. No. 4 relates to fraudulent intent of appellant. This was fully covered in the court's main charge, he requiring the jury to find that appellant took the money from Robinson without his consent, and with the intent to deprive Robinson of the same, and fraudulently to appropriate it to his own use and benefit. No. 5 relates to the issue that if Robinson voluntarily gave the money to appellant in payment for a dog he would be guilty of no offense. This was sufficiently presented by the court's main charge, in the absence of any objection thereto, he instructing the jury: "Before you can find the defendant guilty in this case, you must believe from the evidence, beyond a reasonable doubt, that defendant not only made an assault on said Robinson, or that he used violence towards said Robinson, or that he put said Robinson in fear of life or bodily injury, but that by means of said assault, violence or fear, he fraudulently took from said Robinson the property described in the indictment. Therefore, if you believe that said Robinson voluntarily gave to defendant the property described in the indictment, towit: One ten dollar bill and two one dollar silver coins, or if you have a reasonable doubt whether said Robinson voluntarily gave same to him, you will acquit the defendant." No. 6 undertakes to present an issue not made by the testimony, and, of course, was properly refused.

Finding no error in the record the judgment is affirmed.

*Affirmed.*