## JAM MILLER v. THE STATE.

### No. 7559.   Decided April 18, 1923.

### Rehearing Denied June 6, 1923.

**1.—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence did not raise the issue of manslaughter, there was no error in the court's failure to submit a charge thereon.

### 2.—Same—Verdict—Misspelling—Rule Stated.

Where the verdict of the jury read as follows: "We, the jury, find the defendant guilty of murdy and asses his pinushmint at (15) fifteen years in the state penitentiary;" and the indictment and the charge of the court were in due form, there is no reversible error because of the misspelling of the word "murder."

### 3.—Same—Continuance—Rule Stated.

A continuance sought for testimony purely impeaching in its character, or to show the good character of the accused, should ordinarily be refused, and was correctly overruled in the instant case.

### 4.—Same—Rehearing—Facts in Opinion—Inaccurate Statement—Practice on Appeal—Accidental Killing.

A mere inaccurate statement of the facts, in no wise appearing to have been material to the decision of the court cannot be held ground as a granting of a rehearing, and appellant's proposition of an accidental killing has been settled by the verdict of the jury.

### 5.—Same—Verdict—Charge of Court.

Where the court only submitted murder, the word "murdy" may be entirely eliminated and it would still appear from the record that the jury had found defendant guilty, and assessed his punishment at fifteen years in the penitentiary, and the same would be responsive to the only issue submitted, and there is no reversible error; the mere misspelling of a word etc., does not vitiate the verdict.

Appeal from the District Court of Henderson. Tried below before the District Court of W. R. Bishop.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

Opinion states the case.

*Miller & Miller,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Conviction is for the murder of Vattie Mc-Cuin, with punishment assessed at fifteen years confinement in the penitentiary.

The statement of facts reveals that appellant had been keeping company with deceased for some time. She lived with her sister Lula Dixon. On the night of the homicide Vattie attended a prayer-meeting service, appellant also being present. Some time during the meeting Vattie had gone to the well near the church in company with Miles McDonald to get some water. As they were returning to the church appellant called to Vattie, saying he wanted to see her. Instead of going to him she ran in the church. A short time after this occurrence appellant had a conversation with, or in the presence of, three parties, in which he threatened to kill deceased either that

night or the next day.  After the meeting was over appellant and deceased left together to go to her home.  The family had gone to bed when they arrived but Lula heard them when they stopped at the well to draw some water, and immediately thereafter heard a shot.  She ran into the yard and saw appellant standing near the body of deceased which was on the ground.  She immediately accused him of having killed her sister.  He at first replied that she had shot herself; afterwards in talking to this witness and others he claimed that she had been shot accidentally.  While at the church he had a single barrel shotgun with him which he had brought from there to the place of the killing.  He accounted for having the gun by claiming that he and some other negroes had been out hunting and that he had come by the prayer-meeting before going home.  His alleged hunting companions were not called as witnesses to substantiate this part of his story.  He claimed that after reaching the well he had set the gun down, leaning it against a board; that as deceased turned to go in the house he picked up the gun and struck the hammer against an obstruction causing it to discharge; that the shot had taken effect in deceased, resulting in her death.  When one of the negroes returned to the house to get a light appellant ran away from the scene of the homicide, went to the home of the man for whom he was working, reported what had occurred and his employer telephoned for the officers, appellant waiting there until the officers came and arrested him.  The description of the wound and the range of the shot do not comport with appellant's explanation that it was accidentally fired as claimed by him, and entirely negatives the truth of his first statement that deceased had shot herself.  It was claimed by the state that on a previous occasion appellant had cut deceased; this was denied by him and the evidence is conflicting upon that point, deceased first having claimed he cut her intentionally, and later asserting they were in a scuffle and that she was cut accidentally.  It was the theory of the state that appellant had killed her on account of having found her with Miles McDonald at the church a short time before the killing.  Appellant contends that the evidence is insufficient to support the conviction, there being no eye witness to the killing, and the testimony of appellant being to the effect that the shooting was accidental.  This position is not tenable. The jury was not bound to accept appellant's explanation of the matter, where the physical facts and other circumstances placed in evidence by the state indicated an intentional killing.  Under the facts disclosed from the record we would not be authorized to disturb the finding of the jury.

The court did not err in refusing to charge the law of manslaughter. There was no evidence raising such issue.  Having properly declined to charge on manslaughter there was no basis for the requested charge relative to suspended sentence.

Appellant assails the verdict as insufficient to support a judgment condemning him to be guilty of the offense of murder. The verdict is in the following words:

"We, the jury, find the *defendant* guilty of *murdy* and *asses* his *pinushmint* at (15) fifteen years in the state penitentiary."

No point is made upon the misspelling other than of the word "murdy." It is conceded that under prior decisions of this court the other misspelled words would not affect the validity of the verdict, but it is contended that there is no such offense known to our law as "murdy." In determining whether the verdict of the jury is sufficient the court should apply the well established rules relative thereto, which may be concisely stated as follows:

"Verdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained the verdict should be held good as to form. The object should be to ascertain the intention of the jury. Bad spelling or bad grammar will not vitiate a verdict when the intention of the jury can be reasonably ascertained."

It is also well established that the charge of the court may be looked to in aid of the verdict. We cite no particular cases supporting the general rules announced but many may be found collated by Mr. Branch in his Ann. Penal Code, under Section 646, pages 331 and 332. The indictment alleged the offense of murder. The court charged only upon that and upon no lesser degree. Necessarily under the charge of the court if appellant was found guilty at all it could be of no offense other than murder. Giving to the verdict the liberal construction required under the authorities we think there is no difficulty in determining what the intent of the jury was when construed in the light of the charge of the court and the penalty inflicted. In Walker v. State, 13 Tex. Cr. App., 620, the verdict of the jury found defendant guilty of "mrder." The verdict was upheld as properly supporting a judgment against defendant as being guilty of the offense of murder. In addition to the cases collated by Mr. Branch many others will be found cited under Note 13, and 19, Art. 770, Vernon's Cr. Statutes, Vol. 2. If the trial judges would examine the form of the verdicts before receiving same corrections in matters of form could be made and this court relieved of many questions raised on appeal.

Appellant made application for continuance for a number of witnesses, some of whom lived in Henderson County, and some in the adjoining county of Anderson. All appear to have been summoned except Henry Campbell and Ed. Chambers. Appellant expected to prove by Campbell and those who had been summoned his own good reputation as a peaceable and quiet citizen, and the bad reputation of some of the state's witnesses for truth and veracity. A continuance sought for testimony purely impeaching in its character,

or to show the good character of accused, should ordinarily be refused: See Branch's Ann. P. C., Sections 324 and 333. We fail to discern any reason causing the instant case to fall within an exception to the rule. As to the witness Chambers, who was not summoned, the diligence was not sufficient. The indictment was returned on August 30th. The application for continuance shows appellant was in jail at this time. The case was called for trial on September 29th; the process for this witness was not issued until September 25th, only four days before the trial. The recitals in the application are sufficient to show if process had been issued earlier for this witness his presence at the trial could in all likelihood have been secured.

No error appears from bill of exception number 3, when considered in connection with the stenographic notes attached thereto as a part of the trial judge's explanation.

Finding no error calling for a reversal the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### June 6, 1923.

LATTIMORE, Judge.—Appellant's chief complaint in his motion for rehearing is of the fact that we stated in the opinion that appellant first claimed that deceased had shot herself. A mere inaccurate statement of the facts, in nowise appearing to have been material to the decision of the court, could not be held ground for the granting of a rehearing. Appellant seems to rest his case entirely upon the proposition of an accidental killing. The trial court told the jury that if they found from the evidence that the killing was accidental they should acquit. There appears to have been no exception taken to the charge, and the jury by their verdict of guilty have settled against appellant the proposition of whether it was an accidental killing.

Appellant again urges that the verdict was so defective as that it could not properly be made the basis of a judgment of conviction for murder. The verdict is set out in our original opinion. If there appeared any difficulty in ascertaining the purpose and intention of the jury, from the language used by them, there might be a question raised, but there is not. The court submitted only the question of appellant's guilt of the offense of murder. If we eliminate entirely the word "murdy" as same appears in the verdict, it would still appear that the jury had found the defendant guilty and assessed his punishment at fifteen years in the State penitentiary. This would be responsive to the only issue submitted by the court. When the fact is considered that the appellant was indicted for murder and that the court submitted to the jury the issue only of murder, and the jury in response thereto found the defendant guilty and assessed his

punishment at a penalty within that affixed to the crime of murder by our statute, there is no room for complaint that the verdict is not intelligible and not responsive. As stated by us in the original opinion, the books are full of decisions holding that for mere incorrect spelling or the use of inaccurate language a verdict will not be held bad when the meaning is not uncertain.

The motion for rehearing will be overruled.

*Overruled*