GORDON WILLIAMS v. THE STATE.

No. 13953. Delivered June 17, 1931.
Rehearing Denied November 18, 1931.

The opinion states the case.

*Jones & Jones,* of Mineola, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for possessing intoxicating liquor for purposes of sale; punishment, one year in the penitentiary.

There is complaint of misconduct of the jury. The court heard evidence and overruled the motion for new trial. Seven jurors testified. What occurred in the jury room must be arrived at by a study of what was said by these jurors upon the hearing. All of them agree that the matter of the failure of defendant to testify,—which is the misconduct relied upon,—was referred to but once, and not then discussed. We think the trial court, and this court, justified in concluding that these men, who apparently had no other interest in this case than to tell the truth, were trying as best they could to reproduce the same statement made by some person not identified, in the jury room. Five jurors said they heard some one say that appellant had not testified,—that this was only said one time, and that there was no discussion of it. One juror testified that if such statement was made he did not hear it. The remaining juror, called by appellant, testified that there was but one mention of this matter; that some one said the defendant did not deny it, or that he did not put any testimony on, and that this was at once stopped by the foreman who read from the charge that the failure of the accused to testify could not be discussed, and that there was no further reference to it. Merely stating that the defendant did not testify,—a fact of which each juror was necessarily cognizant,—would not ipso facto be deemed a violation of the statute, or a matter supporting any deduction that such fact was being considered to the detriment of the accused. One man who had

served on the jury, approached after the verdict, might have one recollection of what was said in the jury room, and another or others have a different recollection of the same statement. Hearing these jurors state their version of what was said in the necessary effort to properly administer justice, makes it the duty of the trial court to arrive at some conclusion as to what was said, and to determine the effect of it, and this court will decline to reverse his ruling unless satisfied that his discretion has been abused. We perceive no abuse of such discretion in this case.

There is complaint of refusal to continue. The application was at least a third or fourth application. One of the absent witnesses appeared and testified. The purpose of her testimony and that of Sanders, another of said witnesses, was to impeach state witness Wilson. Ordinarily a case will not be continued merely to secure impeaching testimony. Franklin v. State, 34 Texas Crim. Rep., 203, 39 S. W., 1088. See cases cited in section 324, Branch's Ann. P. C. The remaining absent witness was appellant's mother, and it was stated that she would testify that appellant bought th: whisky found in his possession for use by his father as medicine. Her absence was attributed to illness. The court heard evidence when the motion for new trial was presented, and seems fully justified in concluding that said witness was able to appear and testify. The court qualifies the bill complaining of the refusal of a continuance by stating further that appellant at one time made an application for continuance because of the absence of his father by whom he set up that he could prove the same things now stated as expected from his mother, and swore in his former application that there was no other witness except his father by whom he could prove such facts.

Bills 2, 3, 6 to 12, 14 to 21 present objections to matters dependent on the validity of the affidavit and search warrant had by the officers at the time of their raid. The affidavit was sufficient. Same was not made on information and belief. The date laid was October, 1928, and it appears that the affidavit was filed October 3, 1928, and the search warrant issued thereon on the same day by the same official who took the affidavit. The search warrant was dated October 3, 1928, and referred to the affidavit which "Has been made before me". The place to be searched was sufficiently described. The testimony set out in each of said bills is pertinent and admissible. It appears without contradiction that appellant's wife was seen by the officers when they entered the place, with a half gallon jar of whisky which she was apparently about to break. The officers took same from her. They said they heard a crash inside of another room, and upon entering they saw broken glass on the floor which looked like a broken half gallon jar; corn whisky was on the floor. One witness swore that as they drove up appellant ran into the house and then came out the back door with a case in his hands. He raised this and the officer told him not to throw it. He raised it again and the officer

pointed his pistol at appellant, who then came down and handed the case to the officer. There were seventeen pints of whisky in the case. The officers found a quantity of home-brew.

It was permissible to show that a few nights before this raid appellant sold whisky and home-brew at his house. This as showing the purpose for which he possessed the liquor found by the officers. Complaint of the receipt of this testimony is made in bills 4, 5, and 13.

There are a number of bills of exception complaining of different parts of the charge of the court, each of. which has been examined, and in none of which do we find any error. We are not favored with any brief by appellant.

The judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The statement of facts on the main trial is only twenty-seven pages long. On the other hand, the transcript contains 237 pages, embracing thirty-four bills of exception. No brief was before us when the case was considered originally. Appellant has filed a motion for rehearing which contains nineteen pages, in which he urges that each bill of exception presents error. This has necessitated a complete review of the entire record for fear that in the absence of a brief something had been overlooked. It can at once be seen that this entails upon the court a tremendous and uncalled for amount of work.

After again considering each question presented we find nothing upon which a reversal can be predicated. The point that has attracted our most serious attention is appellant's claim that a new trial should have been granted because he was deprived of the testimony of his mother, it being averred that she was not able to appear as a witness and testify. We have taken into consideration the court's qualification to the bill of exception complaining of the denial of continuance, and also the evidence heard upon the motion for new trial. In February, 1929, appellant had applied for a continuance because of the absence of his father, whom he then said would testify to the same facts now expected from his mother. And then he made affidavit that the testimony expected from his father could not be procured from any other source. When this case was called for trial in June, 1930, he made application for continuance setting up that he expected from his mother the same evidence that he had formerly sworn could be secured from no one except his father. In the evidence heard upon motion for new trial reference is made to a "first case" and "second case" of appellant. It seems that on the trial of each difficulty was experienced in getting appellant's mother to the court house. Whether she was brought there upon the trial of the first case does not appear. It is shown that upon that occasion, after having been advised by the doctor who examined her that she was able to go she said, "Well, I will show

you when I get over there that I am not able to go and testify". The same thing happened when her presence was sought upon the trial of the instant case. The doctor testified upon that point as follows: "Something like ten days later I went back to see her when the second Gordon Williams case was called. I didn't see any difference in her condition then; practically no change from the first time. It was my opinion that she was able to come to the court house and testify if she wanted to. I told her so. She stated that she wasn't able, and I told her I was sure she was because there wasn't a thing in the world wrong with her. I said, 'you are just as normal as you ever are; not any more the matter with you now than there is the matter with you all the time'. I also stated 'you know how I am not any more friend to the court than I am to you, I am just telling you plain facts; you are plenty able to go if you want to'. I believe about that time the deputies told her that they had to take her and they started to get ready or started out or something to get ready and I told her she had just as well get ready because she was going to have to go. She says, 'well, I will show you when I get over there that I am not able to go and testify'. I didn't see her after she got there."

Another doctor who did see the witness after she was brought to the court house advised the court that the witness was not physically able to testify, and said, "I don't think she was at that time because she had worked herself up to a frenzy, in a way". He further says, "After observing her all during her stay in Quitman on that last case until the time she went home after the case was closed, if it had been her desire to testify and if she had done so voluntarily I feel like she would have been able to testify. * * * I think the condition that she was in here in the court house was brought on of her own volition. I think the whole affair from the beginning, from the time I saw her, that accelerated pulse rate and all, was probably due to a voluntary action on her part in the beginning."

It can readily be seen that the testimony presented a situation which demanded the exercise of discretion on the part of the trial judge. Such discretion is necessarily lodged there. From a further careful review of the evidence we can not say that under such evidence and the circumstances of the whole case, the sound judicial discretion of the trial judge was abused in overruling the motion for new trial based upon the refusal of the continuance.

The motion for rehearing is overruled.

*Overruled.*