## ERNEST LAFITTE V. THE STATE.

No. 15215.   Delivered October 26, 1932.
Rehearing Denied November 23, 1932.
Reported in 54 S. W. (2d) 136.

The opinion states the case.

*Dallas Ivey* and *Maurice Short,* both of Center, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for selling intoxicating

liquor; punishment being one year in the penitentiary. The indictment alleged that the sale of intoxicating liquor was made by appellant to one Jess Emanis.

The purchaser and Henry McCauley testified that appellant sold Emanis a pint of whisky for one dollar. Appellant did not testify. Through the only witnesses offered by him he attacked the reputation for veracity of the state's witnesses. One of his witnesses also testified that McCauley had offered to absent himself from the trial if appellant would pay him ten dollars.

We first consider bill of exception number seven as it complains of the refusal of continuance. The application was based upon the absence of three witnesses, Virgil Fincher. J. B. Atkinson, and Eliza Atkinson. Appellant was arrested on November 9th. The case was tried November 26th. In the application for continuance, it is averred that the request for process for witness Fincher was made on November 20th. The written request for such process attached to the application is dated November 23d. This discrepancy, however, we regard as immaterial. Appellant undertook to excuse the delay in asking process for Fincher by stating in his application that he had been advised through his attorney that the clerk of the court had informed him that process would not be issued in ordinary felony cases until such cases were set for trial for some particular week of court. The bill of exception is defective, in that nowhere in it nor in the application for continuance is it averred that the case against appellant had been set for trial for any particular week of the term. So far as the record shows, the case may have stood for trial at any day of the term the trial judge saw fit to call it. Furthermore, it appears from the qualification to the bill that no evidence was offered in support of the averments in said motion, and further that "if the clerk had made any statement (which he denied) that process could not be issued until the case was set, it was without authority in law or from the court." Considering the bill in connection with the qualification, it shows a lack of diligence as to the witness Fincher. It was averred in the application for continuance that J. B. Atkinson and Eliza Atkinson, if present, would testify that they knew the general reputation of state's witness Henry McCauley, and would testify that his reputation for truth and veracity was bad. Process for these witnesses was not taken out until the 25th day of November, the day before the trial. The return of the officer, however, shows that process had been served on J. B. Atkinson, and that he was

absent. The proposed testimony of the two Atkinsons was purely impeaching.

It is stated by Mr. Branch in section 324 of Branch's Ann. Tex. P. C., that: "* * * A continuance sought to secure testimony which would only be available to impeach a witness who is to testify, should ordinarily be refused." Many authorities are cited in support of the text. Other authorities to the same effect are collated in note 26 under article 543, Vernon's Ann. Tex. C. C. P., and also in the same note under the same article in the 1932 cumulative annotation. In addition to these general references, we cite Jones v. State, 115 Texas Crim. Rep., 60, 29 S. W. (2d) 791; Williams v. State, 119 Texas Crim. Rep., 340, 43 S. W. (2d) 98; Hays v. State, 120 Texas Crim. Rep., 171, 49 S. W. (2d) 813; Russell v. State, 88 Texas Crim. Rep., 582, 228 S. W., 948; Freeman v. State, 91 Texas Crim. Rep., 410, 239 S. W., 969; Moore v. State, 92 Texas Crim. Rep., 48, 241 S. W., 475; Miller v. State, 94 Texas Crim. Rep., 508, 251 S. W., 1104. The refusal of the court to grant a continuance or a postponement under the circumstances was not erroneous.

In bill of exception number one appellant complains of the refusal of a special charge which would have instructed the jury that they could not consider the testimony of the witness Jess Emanis for any purpose. It is evident from the bill that this special charge was based upon the cross-examination of Emanis. On his direct examination he testified positively and in no uncertain terms that he purchased the liquor in question from appellant, and refers to him as "Mr. LaFitte." He said that, when they left the point at which they had the first conversation with appellant, "Mr. LaFitte" was driving, and that, after they got to the point where the liquor was secured, "this defendant *LaFitte* got out and they walked around a while." In another place in his direct examination he says: "Mr. LaFitte delivered me the whisky. I paid him a dollar for it." On cross-examination he became uncertain about the identification of appellant, and testified that at the time he bought the whisky he did not know him, and, not having known him, he could not be positive about who he bought it from, but that appellant looked like the same man, and says, "I can swear to the jury that I bought whisky from this man—I mean he just looks like him. I am not positive about that, but he looks like the same fellow. I hadn't seen him until then. I can't be positive about things like that." On redirect examination he testified that the man he bought the whisky from was a one-armed man, and the court in explanation of the bill states that appel-

lant was a one-armed man; that is, that a part of one arm had been amputated. Under the circumstances, the court properly refused the requested charge.

Bill of exception number two recites that appellant had not taken the witness stand, nor put his character in issue, and that no testimony had been introduced tending to show that appellant had been indicted for other felonies or misdemeanors involving moral turpitude. The bill then complains of language used by the county attorney in his opening speech to the jury. There is some difference in the pronouns used as appears in the body of the bill and the qualification thereto. The qualification was accepted without objection, and is binding on this court. According to the qualification, the language used was as follows: "They must have wanted to kill time because they had some other cases that they wanted to be slow in getting to." It is appellant's contention that this statement conveyed to the jury information that there were other criminal charges pending against appellant in that court. In further explanation of the bill the court says only *one* defendant was on trial, but that he was represented by *two* lawyers, and that the court did not understand from the language used by the county attorney that he was referring to appellant, but to his counsel. We think under the circumstances this court would be unauthorized to say the jury must have understood that the county attorney was referring to appellant when the trial judge, who was upon the ground and heard the language used and understood the situation, says he did not understand the language to convey such meaning.

It appears from bill No. 3 that the county attorney in his argument said: "It's a wonder to me that they did not plan some better defense for an old-time bootlegger, as they usually have a lot of tricks in their bag. Looks like they could have gotten a better one than this." Appellant objected to this argument as being a reference to the fact that he did not testify in the case. While appellant offered no affirmative defensive testimony, he did attack the reputation of the state's witnesses, and also attempted to show that one of them had sent to appellant a proposition that for a consideration of ten dollars he would absent himself from the trial. The language complained of was not a direct reference to the failure of defendant to testify, and, before it can be held to have been an indirect reference to such fact, the implication from the language used must be a necessary one. Boone v. State, 90 Texas Crim. Rep., 374, 235 S. W., 580; Howard v. State, 108 Texas Crim. Rep., 373, 1 S. W. (2d)

289; Kennington v. State, 120 Texas Crim. Rep., 192, 49 S. W. (2d) 776. The bill shows no error.

Appellant avers in his motion for new trial that the jury considered as a circumstance against him the fact that he did not testify in his own behalf. He brings this question forward by bill of exception number four, and also by a statement of facts which incorporates the testimony of the ten jurors who were examined upon the point. In explanation of the bill, the trial judge very fairly analyzes the testimony of the jurors and states that only five of the jurors claimed to have heard any mention of appellant's failure to testify; five heard no mention of it at all. The juror Brown, whose affidavit is attached to the motion for new trial, testified upon the hearing of the motion that as soon as he called the attention of the jurors to the fact that the court had directed them not to consider the failure of appellant to testify it was not further mentioned. Another juror said the only mention he heard in regard to the matter was after they had already voted appellant guilty; that immediately upon it being mentioned their attention was called to the charge of the court and nothing further was said about it. As we gather from the testimony generally, those jurors who claimed to have heard any mention of the matter said it came up in the form of a question; some juror saying he wondered why appellant did not take the witness stand. The attention of this juror was immediately called to the charge of the court with reference to the matter, and there was no further mention of the fact, and no discussion of it. The trial court's finding with reference to the matter is epitomized in the last sentence of his explanation to the bill, from which we quote: "From the testimony the court concludes that no injury to defendant was shown, and there was no discussion of his failure to testify, going beyond a bare mention of the fact."

We think the finding of the trial judge entirely justified under the evidence, and do not deem it necessary to set out the testimony of the jurors in detail. It has been held many times that the bare mention of the fact of a defendant's failure to testify does not call for a reversal of the case under the provisions of article 710, C. C. P. Probst v. State, 60 Texas Crim. Rep., 608, 133 S. W., 263; Powers v. State, 69 Texas Crim. Rep., 494, 154 S. W., 1020; Espinoza v. State, 73 Texas Crim. Rep., 237, 165 S. W., 208; Freeman v. State, 118 Texas Crim. Rep., 67, 39 S. W. (2d) 895, opinion on rehearing and authorities therein cited.

Bill six recites that in his closing argument the district at-

torney made the statement that "they have offered no defense." Objection was interposed that this was a reference to the fact that appellant had not testified in his own behalf. It is apparent from the language itself that it was not a direct reference to the failure of appellant to testify, and, under the circumstances shown by the record, it can not be regarded as a necessary allusion to such fact. A defense of a sort had been offered in that appellant had undertaken to break down the state's witnesses by impeaching their reputations for truth and veracity, and also in an attempt to show that one of them had offered for a consideration to absent himself from the trial. It further appears from the statement of facts and the court's qualification to the bill that another man was with appellant at the time of the alleged sale. This man was not called as a witness by appellant, nor his absence in any way accounted for. The bill is without merit.

Bills of exception five, eight and nine, when considered in connection with the court's qualifications, are without merit, and we deem it unnecessary to discuss them.

Bill of exception number ten complains of the ruling of the court in sustaining the state's objection to certain questions propounded by appellant to a witness. The bill fails to show what the answer of the witness would have been to the question asked. In the absence of the answer expected the bill fails to exhibit error.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We know of no authority holding it proper to tell the jury in a charge to disregard the testimony of a witness who has sworn on direct examination to one state of facts, and on cross-examination, has made answers which might appear contradictory. The jury see the witnesses, hear the questions asked and the answers given, and are wisely charged with the sole responsibility of passing on the credibility of such witnesses and the weight to be given to their testimony. We think we correctly upheld the action of the trial court in refusing the special charge asking that the jury be told not to consider the testimony of the witness Emanis.

We must take the bills of exception as they appear in the record, unless attacked in some authorized way, in seeking to solve the erroneous or harmful character of the things therein complained of. The arguments objected to, viewed in the light

of the qualifications placed on the bills, were properly held not subject to the objections made. The complaint of misconduct of the jury was fully analyzed and discussed in the original opinion, and we think correctly disposed of.

The motion for rehearing will be overruled.

*Overruled.*