## BEHRINGER v. SOUTH PLAINS COACHES, Inc. (No. 1167–5144.)

Commission of Appeals of Texas, Section A.
Feb. 6, 1929.

Vickers & Campbell and W. F. Schenck, all of Lubbock, for plaintiff in error.

Lockhart & Garrard and F. D. Brown, all of Lubbock, and John H. Awtry, of Dallas, for defendant in error.

NICKELS, J. Judgment for Behringer, allowing recovery for personal injuries suffered in and as a result of a collision of one of the coaches of defendant in error with an automobile driven by a stranger, was reversed, and the cause was remanded, by the Court of Civil Appeals. 4 S.W.(2d) 1003. Writ of error was allowed upon assignments presenting matters to be discussed.

1. Since, according to his averments, Behringer's "head was badly cut and bruised," and since "fracture" conceivably may be evidence, result, or other self of "cut" or "bruise," we are inclined to believe the allegation was sufficient to admit proof of "fracture." His head received the "bad cuts and bruises" in violent contact with parts of the coach, he said, and as a result he was "crazed and dazed"; thus he alleged "facts" importing both the act of "shaking or agitating, particularly by the stroke or impact" of two bodies and the "state of being shaken— the shock occasioned by two bodies coming suddenly and violently into collision" (Century Dict. & Cyc.; Beave v. St. L. Tr. Co., 212 Mo. 331, 111 S. W. 52, 59)—with particular allocation of shock to brain, for he was "crazed and dazed." If contrary to our experience we assume that "bad cuts and bruises" do not "necessarily and proximately" result in shock in the brain, which is concussion in at least one phase and to some extent, there is, nevertheless, averment of a "crazed and dazed" condition immediately consequent to infliction of "bad cuts and bruises," and this we are inclined to believe warranted admission of the "expert" testimony discussed in the opinion of the Court of Civil Appeals.

However that may be, there was an issue tendered respecting Behringer's mental state on the day after that of the collision, particularly discussed in 2 herein below.

If he had at the time a "fracture of the skull" whose probable result was "concussion of the brain," he had a right to prove the condition and its probable result, for that proof had an obvious relation to the matter of alleged contractual incapacity.

The record does not show a request of the trial judge to limit effect of the testimony

about "fracture" and result to the issue of capacity, vel non.

▮ In consequence, the evidence could not be excluded in any event (at most it might have been restricted to the issue last mentioned), and its admission without restriction is not ground for reversal. Blum Milling Co. v. Moore-Seaver Grain Co. (Tex. Com. App.) 277 S. W. 78, 81, and cases there cited.

2. As basis for accord and satisfaction, as well as basis of a claim of assignment by Behringer to a person not a party to the suit, defendant in error averred that on November 19, 1926, Behringer executed a paper evidencing his release of defendant in error and transfer of whatever claims he might have against other persons "lawfully responsible for the damage."

By supplemental petition, Behringer set up incapacity, etc., resultant his injuries in avoidance of the alleged accord and satisfaction, etc. Defendant in error replied that Behringer, when he executed the "release," was "in possession of all his faculties" and "knew what he was doing," etc., in consequence of which the "release" is binding, etc. The relevant evidence would support a finding either way on the issue thus made. Six special issues were submitted. In the first it was inquired whether "the driver of the bus * * * was guilty of negligence." In immediate connection the jurors were informed that they "need not answer any further questions" if they should answer "special issue No. 1 in the negative," but that, if "special issue No. 1" should be given affirmative answer, they should then "answer the following special issue." No. 1 was answered "Yes."

In issues 2 and 5, inclusive, it was inquired, in order whether negligence of the driver was "proximate cause of the accident," the "collision" was "due to unavoidable accident," "Behringer at the time he signed the release in evidence * * * was incapable of understanding the nature and effect of the instrument," and "the agent and attorney of the defendant company misrepresented to * * * Behringer the nature and effect of the instrument he signed." Issues 2 and 4 received affirmative answers, and issues 3 and 5 received negative answers.

Special issue No. 6, with its accompanying instructions, reads thus: "What amount, if any, do you find * * * that the plaintiff, Behringer, has been damaged as a result of the accident? You will answer by stating the amount which you find and determine from the evidence. In determining the amount of your verdict for damages, if you allow damages, you should allow him such sum as you believe from the evidence, which if paid now, will compensate him for the injuries sustained, if any; and in assessing damages, if any, you may take into consideration the mental and physical pain suffered, if any * * *; and if you believe from the evidence that his injuries, if any, are permanent and will diminish his capacity to earn money in the future, then you may allow him such sum as you may believe from the evidence will be a fair compensation for his diminished capacity, if any. * * *" The amount found in response to "special issue No. 6" is $3,000.

According to a bill of exceptions, "while plaintiff's attorney was arguing" issue No. 4, inquiring whether Behringer "was incapable of understanding the nature and effect" of the "release," he said to the jurors: "If you say that man (plaintiff) did know the full import of what he was signing, then we will lose this case." Whereupon, "at the time said argument was made and before the jury was retired," the "defendant requested the court in writing to instruct the jury not to consider such argument"; but "the court refused to so instruct the jury." The "request in writing" thus mentioned was in these words: "Defendant objects and excepts to the argument of the attorney for the plaintiff as follows: 'If you say that man the plaintiff, did not know the full import of what he was signing then we will lose this case'—and asks the Court to instruct the jury not to consider such argument." Appended to the "request" is this statement by the judge: "Presented to the Court at the time the statement was made and before the jury was retired, and the same was by the Court refused, and this bill allowed." In qualifications put on the bill first mentioned, it is shown that "the attorneys for plaintiff knew nothing about such objections until after the jury retired," and that "no special charge was ever prepared or presented to the court, except the written objection itself, which contains a request that 'the court instruct the jury not to consider such argument.'"

We must, of course, take as established facts: (a) The "argument" as quoted was made by counsel for plaintiff, Behringer, in immediate respect to issue No. 4; (b) counsel for defendant, South Plains Coaches, Inc., promptly made known their "objections and exceptions" to the trial judge, but not to counsel for plaintiff, together with a request for instructions to the jurors; (c) the trial judge then overruled the "objections and exceptions" and refused instructions, which action, however, was not known by counsel for plaintiff "until after the jury retired."

▮ Since, as is manifest, the "argument" was improper, the trial judge had authority, if not duty, to act with or without objection, exception, or request of counsel for defendant. Rule ———. Since attorneys using improper argument assume the risk (Emberlin v. Wichita Falls, R. & Ft. W. R. Co. [Tex. Com. App.] 284 S. W. 539), and since the authority of the judge is such as has been mentioned, it was not essential that the fact of objection and request made be communicated to counsel for plaintiff in order

to invoke a ruling by the judge. Nor could an erroneous ruling be cured by his failure to call attention of counsel to it or to the occasion of it. Articles 2186 and 2190, R. S. 1925, cited by counsel for Behringer, have relation to a different subject-matter, and the broad power and duty of the judge in respect to controlling argument precludes the necessity for preparation and submission, to judge and adverse counsel, of formal instructions.

As presented, then, we have a case of improper argument allowed and allowed to be considered by the jurors without effort by the judge at curing or minimizing its effect, although objection and request for instruction were seasonably made. In favor of plaintiff in error, we assume that the matter of actual prejudice or the probability thereof is in the case, although no such condition as that just described was before the courts in Black v. Wilson (Tex. Civ. App.) 187 S. W. 493, 496; Schmidt v. Houston El. Co. (Tex. Com. App.) 242 S. W. 1019; Emberlin v. Wichita Falls, R. & Ft. W. R. Co. (Tex. Com. App.) 284 S. W. 539 (to be read with same case by the Court of Civil Appeals, 274 S. W. 991); Davis v. Hill (Tex. Com. App.) 298 S. W. 526; or Martinez v. Martinez (Tex. Civ. App.) 6 S.W.(2d) 408—cited by his attorneys.

In G., H. & S. A. Ry. Co. v. Harling (Tex. Com. App.) 260 S. W. 1016 (same case by the Court of Civil Appeals, 208 S. W. 207), it was held that certain argument, to which objection duly made was overruled, though improper, could not be said to have been prejudicial since, in that argument, counsel merely told the jurors "something that they must have already known at the time he told it to them." The jurors in that case, it was held, "must have already known" the matter of the "argument" because of simplicity of issues drawn in pleading and carried out in introduction of proof. That the opinion was not intended to warrant ruling of lack of prejudice in event of argument which might convey additional information to jurors is plainly stated therein.

In the present case the issues made in pleading and proof are not comparable, in point of simplicity, to those involved in G., H. & S. A. Ry. Co. v. Harling, supra, wherein negligence of defendant and "contributory negligence" of plaintiff made up the controversy.

It might be true that the ordinary juror would easily grasp the legal effect of mental capacity, or its reverse, as set up here, if the averments respectively made were not complicated by other matters. But complications exist. On this point we must consider the charge as given and the impressions it may well have made upon jurors unskilled in law.

As noted, six "issues" were given in charge. Touching importance of the first,

the jurors were told that a negative answer would so operate as to render each and all other questions unimportant. In likely conveyance of actual impressions, this was tantamount to saying (a) that, if the driver was not negligent, Behringer could not recover whatever the facts and law relevant to all other matters; and (b) that, if the driver was negligent, each and every other matter submitted would be important. The jurors were told, in effect, that a finding against negligence would put an end to Behringer's claims. Like information in respect to a finding of mental capacity, etc., was not given; on the contrary, the jurors, in effect, were told that, if negligence were found, no other single "issue" was conclusive. There is much emphasizing basis for the idea thus probably conveyed in the language of the sixth and concluding "issue." Therein the jurors were asked to find the "amount, if any, Behringer has been damaged." Therein also the jurors were told that they, not the law or the court, might "allow him" damages, might "assess damages," etc. Negligence in the driver, proximate cause, lack of "unavoidable accident," mental capacity in Behringer, and lack of misrepresentation by the "agent and attorney of the defendant," might have been found by the jurors, and yet, on the face of the charge, the jurors were still required to "find," allow," or "assess" damages. As a matter of law, of course, the charge given was the superior source of information for the jurors, and as a practical matter the impressions given by the charge would likely override any contrary impressions drawn from the pleadings, proof, or proper argument. And as submitted, the charge was well able to convey and impress the thought that a finding of mental capacity would not result in plaintiff's "losing the case," but that, on the contrary, mental capacity might be found and still the law would so operate, in a way unknown to the jurors, as to permit Behringer recovery of the whole or a part of the "damages" found.

In our opinion, there is lack of warrant for a ruling that, as a matter of law, the improper argument was nonprejudicial. It may have conveyed information not given in evidence or in the charge; and it may have conveyed information dispelling the impression which the charge itself may have made. As a matter of course, we are dealing with the situation practically made and not with the matter of the charge's propriety.

For this reason, in our opinion, the judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause is correct, and we recommend its affirmance.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.