## FLOYD v. FIDELITY UNION CASUALTY CO. et al.  (No. 1135—5417.)

Commission of Appeals of Texas, Section B.
Feb. 12, 1930.

White & Yarborough, of Dallas, for plaintiff in error.

Collins & Houston, of Dallas, and Martin & Oneal, of Wichita Falls, for defendants in error.

RYAN, J. This suit was filed in the district court of Falls county, Tex., by plaintiff in error to set aside an award of the Industrial Accident Board on the conflicting claims of herself and Frankie Floyd, each claiming to be the lawful wife of Andrew Floyd, killed on October 22, 1927, while employed at Rosebud, Tex., as a laborer for the Rosebud Oil & Cotton Company, which carried insurance under the Employers' Liability Act, in the Fidelity Union Casualty Company.

The casualty company has not appealed from the judgment below, and the only controversy here is between said two claimants.

All questions were correctly decided by the Court of Civil Appeals [13 S.W.(2d) 909], in view of the jury's findings on special issues submitted to them, unless the assignment of error complaining of improper argument by counsel for the successful party should have been sustained.

The proof showed that Andrew Floyd, the deceased, and Frankie Huguley were married in Opalike, Lee county, Ala., by a colored minister on November 2, 1900, and afterwards moved to Texas, finally to Wichita Falls, where she testified her home has been since 1907. She further testified that Andrew "had been at home all the time until about the last of October, 1917, when he left because he got into trouble with a white woman." Frankie Floyd seems to have had the white woman arrested and placed in jail. The officers were looking for Andrew at the same time, but he had fled. She testified further that thereafter Andrew came home in August, 1918, having previously written letters to her from different points in Louisiana and Alabama—never from the same place twice. He was at home in Wichita Falls "only a night or two" in August, 1918. From there he went to Gainesville, Sherman, Denton county, Fort Worth, and Henrietta. "He gave me as much as he could for my support during all these years—he ran around so much going from place to place that he didn't have much but whenever he would come home he would give it to me and if he didn't have anything, if he needed clothes we would buy them for him." She further testified that he was in Oklahoma because she received letters from him there—this was either the latter part of 1921 or the first part of 1922—and after that he was at her home, and left after a night or two. She next saw him in 1924. Afterwards she wrote him at Rosebud, but received no answer. The last time she saw him alive was in August or September, 1925, when he spent the night at her home and left the next day. The next time she saw him he was dead. This was at Rosebud, where she went to obtain the body for burial at Marlin, Tex., but the other wife, Willie, refused consent, and the burial took place at Rosebud.

The proof further showed that Andrew Floyd, the deceased, and Willie Teel, plaintiff in error, were married on September 5, 1925, at Ardmore, Okl., by a colored minister. She testified that Andrew, the early part and summer of 1925, worked at the oil mill in Rosebud, then went to Ardmore, Okl. It appears from the testimony of one of the mill officers that he sent Andrew with other negroes to Oklahoma, because there was a drought in the Rosebud section of the country, and afterwards advanced Willie some money to go to Oklahoma—"she said she was going to marry Andrew there."

The case was closely contested. The burden was placed on Frankie by the trial court of overcoming the presumption of the regularity of Floyd's marriage to Willie, and that his prior marriage to Frankie had been previously dissolved, and also of showing that Frankie had not abandoned Andrew without good cause for a period of three years prior to his death. Frankie further testified that she had in her possession the white woman's picture and several letters and telegrams from her to him. She offered such picture, letters, and telegrams in evidence, but upon objection they were excluded.

Counsel for defendant in error, in his closing argument, referred to the fact that such testimony was offered and excluded on objection, and after the court had instructed the jury not to consider said argument for any purpose with regard to the testimony ruled out by the court, counsel continued by saying he considered it highly important, and asked if it was fair to his client not to let the jury know "what all these things are that they are now asking you about"; the bill of exceptions showing the above facts was qualified by the trial judge, as follows:

"Approved with this qualification: That as a continuation of the language of Mr. Martin

quoted in the bill, Mr. Martin continued as follows:

" 'Counsel Mr. Yarbrough asked the jury, "What do you reckon Frankie Floyd is accusing a white woman of something," and my good friend, one I have just met and have learned to admire, Mr. Houston for the insurance company, he said yes it might be that Frankie wrote him off and on and it might not be true. Do you think they want to know. I said it is not fair to this negro woman Frankie Floyd for them to insinuate to the jury with reference to anything that happened in the life of Frankie Floyd and Andrew Floyd and this woman Bessie Pitts and then insinuate there is no truth in it. They have got a right to ask those things. It is a treatment of Frankie Floyd that is just.'

"As soon as the objection was made with reference to the letters that had been excluded from the jury, the Court promptly instructed the jury not to consider any reference to them made by counsel. No request was presented to the Court by a written instruction."

The argument objected to was highly improper, wholly uncalled for, and requires a reversal of the judgment.

In Bell v. Blackwell, 283 S. W. 765, this Commission, speaking through Judge Speer, held that, where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if, under all the circumstances, there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted. There it was contended that, even though the argument is improper, it will not be regarded as prejudice, where the verdict is supported by the overwhelming weight of the evidence, and where any other verdict would have to be set aside, but the court said that such a proposition is not sound, and is contrary to the prevailing rule of decision in this state.

To the same effect is the holding of section A, Commission of Appeals, speaking through Judge Bishop, in Hubb Diggs Co. v. Bell, 116 Tex. 427, 297 S. W. 682.

■ A litigant has the right to object to the introduction of improper evidence, and, when objections are sustained, it is not before the jury for any purpose. Arguments must be confined to evidence admitted by the court. If objections to improper evidence are to be commented on, it would be better for attorneys to permit without objection, the introduction of all sorts of improper evidence against their clients than be subjected to the criticism of attempting to conceal the real truth from the jury. McMahan v. City of Abilene (Tex. Civ. App.) 8 S.W.(2d) 554; Blohm v. Krueger (Tex. Civ. App.) 297 S. W. 596. The argument may have caused the jury to be impressed with the idea that the evidence excluded would have given them fuller information. Behringer v. S. P. Coaches (Tex. Com. App.) 13 S.W.(2d) 334.

In a case like this, when the issue depended more or less on circumstantial evidence, it is impossible for the court to say that the jury was not influenced by such references and argument. Hunstock v. Roberts (Tex. Civ. App.) 65 S. W. 675. Instruction of the court not to consider the argument does not always cure the harm. Trueheart v. Parker (Tex. Civ. App.) 257 S. W. 640; Davis v. Hill (Tex. Civ. App.) 271 S. W. 281.

■ Improper argument injecting into the case matters de hors the record, that are inflammatory, and calculated to prejudice the rights of the losing party before the jury, may, in a proper case, be complained of on appeal, although objection was urged for the first time in a motion for new trial. In some cases efforts to withdraw remarks of counsel can have no other effect than to accentuate their import upon the minds of the jury. 3 Texas Jurisprudence, § 147, and cases cited.

The natural effect of the improper argument was to intensify sympathy for Frankie, the first wife, as the injured party, because of the deceased's alleged relations with a white woman, which caused him to be a wandering fugitive from her bed and board.

■ The trial court refused to permit the alleged letters and photograph tending to show such relations in evidence, and therefore counsel had no right to comment thereon and suggest what such evidence would show if the court had allowed it to be considered.

For the above reason we recommend that the judgments below be reversed and the cause remanded for a new trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.