## MORGAN et al. v. MAUNDERS et ux.
### No. 12387.

Court of Civil Appeals of Texas. Fort Worth.
Dec. 6, 1930.

Rehearing Denied Feb. 7, 1931.

Thomas, Frank & Grady, of Dallas, and Luther Hoffman, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King and Walsh & Smith, all' of Wichita Falls, for appellees.

CONNER, C. J.

This suit was instituted by John Maunders and wife, Edith Maunders, against Russell Morgan and the Trinity Portland Cement Company, hereinafter referred to as cement company, to recover damages resulting from injuries received by the wife in a collision occurring at the intersection of Ninth and Grace streets in the city of Wichita Falls. Russell Morgan, as an employee of the cement company, of Dallas, Tex., was driving one of its trucks and traveling north on Grace street, and Mrs. Maunders was traveling west on Ninth street. The plaintiffs alleged that Mrs. Maunders approached and entered the intersection of said streets while driving at a lawful rate of speed and in a lawful manner, and that Russell Morgan approached said intersection at an unlawful, excessive, and negligent rate of speed, and ran his car in front of plaintiffs' car, striking it, turning it over, and throwing her out on the pavement and seriously injuring her. The plaintiffs alleged a number of specific acts of negli-. gence on the part of Russell Morgan, such as .excessive rate of speed; violation of the speed law of the state and of the city of Wichita Falls; violation of the ordinance of the city of Wichita Falls which gave plaintiff the right of way at said intersection; failure to have his car under control; failure to have lights and brakes; and failure to keep a lookout and to stop or attempt to stop his car, etc.

It was further alleged that Morgan was at the time of the collision in the employ of the cement company and using and driving the automobile in furtherance of the business of said company.

The cement company and Morgan filed separate answers and, among other pleas, filed a general denial, plea of contributory negligence, unavoidable accident, and a special denial that Morgan was at the time engaged in the prosecution of the cement company's business.

The case was submitted to a jury. The charge defined the terms "negligence," "contributory negligence," "proximate cause," and "preponderance of the evidence," and propounded some 30 interrogatories in addition to some 15 special issues requested and given in behalf of the defendant.

The jury returned a verdict in favor of plaintiffs on all material issues of liability presented in the petition and gave negative answers to the special defensive issues requested by the defendants, and returned a verdict in favor of plaintiffs for the sum of $35,000. Upon the verdict so returned, the court rendered judgment in plaintiffs' favor for $20,000; the court having ruled that the verdict was excessive to the extent of $15,000. The motion for new trial was overruled, and defendants have appealed from the judgment so rendered.

The transcript before us covers some 315 pages; the statement of facts some 51 pages; and appellants in presenting their complaints of the proceedings below set forth 229 assignments of error. We have given the record before us as careful a consideration as we have been able to do, and have concluded that the judgment below must be reversed for reasons hereinafter given. Therefore, in accordance with the rule stated in. Texas Jurisprudence, vol. 3, p. 1014, we will not consider all of the questions presented, but only such as we deem prejudicial and such as we deem may become useful to the further disposition of the case.

Appellants will be hereinafter referred to as defendants. In defendants' bill of exception No. 53, it appears that a Mrs. Myers, among others, appeared on the scene soon after the accident, and while Russell Morgan was testifying as a witness for himself, plaintiffs' counsel was permitted to ask him the following questions:

"Q. Did you have a conversation with Mrs. Myers there (at the scene of the accident) that night? A. I had a little, yes.

"Q. What was it? A. She said 'you were driving awful fast.'"

■ The statement of the witness was excluded as against the cement company but admitted as against Morgan, on the ground that it was a part of the res gestæ. The statement was probably not objectionable on the ground that it was not a part of the res gestæ inasmuch as the bill shows that the court stated: "It was right at the time." The statement evidently conflicted with the evidence of witness Morgan as to the rate of speed at which he was traveling. But the statement seems objectionable on the ground that it was in the nature of a conclusion of the witness and indefinite in its character. As said in the case of Panhandle & S. F. Ry. Co. v. Laird (Tex. Civ. App.) 224 S. W. 305, 308: "The expression of mere thought or feeling engendered by a certain occurrence or fact does not form a sufficiently substantial connecting link between the fact and the subsequent statement of an eye witness about it to make that statement admissible in evidence as part of the res gestæ."

■ Nor do we approve the statement of counsel in argument to the jury that the numerous issues in the court's charge embodying the plaintiffs' material allegations of liability should be answered "yes, yes, yes," and that the 20 issues that defendants had requested and which were submitted should be answered by the jury "no, no, no seventeen times no." As it seems to us, the tendency of the argument was in effect to inform the jury that to so answer the issues would entitle the plaintiffs to a recovery.

■ Among other witnesses testifying in behalf of defendants was one Rama Oakes, who, during the course of his examination, testified that there was a boy talking to him near the scene of the accident and at the time thereof. One of plaintiffs' counsel in his argument to the jury made the following statement: "I brought to this court everything to show you the whole truth; where is that boy's companion; I never heard of him until yesterday. I never saw him (Rama Oakes) until he got on the witness stand. Where is that boy's companion." Then, turning to counsel for the defendants, he stated: "You dug him up, then why didn't you dig up the other boy, if you wanted the whole truth laid out on the witness stand. I have a right to criticize. Why didn't you dig him up? If he had (the boy) testified in favor of the defendants, they would have dug him up."

We think this argument was certainly objectionable and not supported by the evidence in the case, and highly prejudicial and inflammatory.

In the case of Metropolitan St. Ry. Co. v. Roberts (Tex. Civ. App.) 142 S. W. 44, 46, the language complained of was: "Don't you imagine if I had the names of the balance of those witnesses, and I could have them here, that some of them would tell things a little different from what the 5 or 6 brought here told? * * * Of course, I know if some of the balance of those witnesses would corroborate some of the witnesses here who have said that the automobile ran into that street car and tried to bust up that street car, I know that they would have them here." It was held that the remarks quoted constituted error, and the court said:

"It was also improper for counsel to tell the jury they had 'the right to consider, under the law, the fact that they have not brought them (witnesses) here is a very strong reason to believe that some of the witnesses would testify adversely to what some of them say.' That the street car company did not bring more of the persons who were on the street car at the time of the accident to testify in the case was not a question for legitimate comment before the jury, and what they might have sworn to was mere conjecture. There is no reason shown by the record why the street car company should or should not have had them present."

In the case of Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363, 365, the court said: "Arguments must be confined to evidence admitted by the court. If objections to improper evidence are to be commented on, it would be better for attorneys to permit without objection, the introduction of all sorts of improper evidence against their clients than be subjected to the criticism of attempting to conceal the real truth from the jury."

■ The evidence sharply conflicted on the issue of whether Morgan was at the time on a mission for his codefendant, the cement company. As a necessary part of their case, the plaintiffs alleged that at the time of the collision Morgan was in the employ of the cement company, using and driving the automobile in furtherance of its business. The burden was undoubtedly upon plaintiffs to establish these allegations by a preponderance of the evidence, and we do not approve the remarks of one of counsel for plaintiffs in addressing the jury, shown by defendants' bill of exception No. 58. It there appears that counsel for plaintiff, directing his remarks to the jury, said: "Read the charge from beginning to end and find burden of proof, find it, my good friend from Dallas

(referring to Mr. D. A. Frank, one of the defendants' counsel) who has traveled in every state and seen more cases than I ever saw; has read more reports than I have ever seen or ever will see—where is your charge on burden of proof? He promised it to you didn't he?"

The court's charge contains no instruction on the burden of proof, and, under the circumstances, we think the argument was subject to the objection of the defendants that its tendency was to lead the jury to believe that there was no burden upon the plaintiffs to establish their case, in that it tended to obscure a fair and impartial consideration of the court's definition of "preponderance of evidence."

██ Nor do we approve the reference of counsel, in argument for plaintiffs, to Dr. Powers, their chief witness, as to the extent of her injuries, as having graduated from a Catholic school, and a further statement in the argument that the "plaintiff (Mrs. Maunders) would not be able to attend her Methodist Church." Arguments of the character have been frequently condemned. See Motley v. Lawrence (Tex. Civ. App.) 283 S. W. 699, 701; Trachtenberg v. Castillo (Tex. Civ. App.) 257 S. W. 657; Busse v. White, 302 Mo. 672, 259 S. W. 458; Moss v. Sanger Bros., 75 Tex. 321, 12 S. W. 619.

Appellees' answer to the several propositions complaining of the argument mentioned is in a general way to the effect that the exceptions were not taken openly, nor the attention of counsel for plaintiffs called thereto, and that no request was made for the jury to be instructed to disregard the argument, and further that no prejudice appears. It appears that prior to the argument, counsel for the defendants stated to the court that they desired not to interrupt counsel for plaintiffs, but would nevertheless make such objections to the argument as they thought proper and have the objections noted by the stenographer, and that this was done without interruption of the argument and without request for an instruction that the argument be disregarded. The court, however, approved the bills of exception. In the case of Emberlin v. Wichita Falls Ry. Co., 284 S. W. 539, it was said by the Commission of Appeals that: "The rules for the district courts provide that in arguments to the jury 'counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel,' and that 'the court will not be required to wait for objections to be made when the rules as to arguments are violated.' When counsel violates this rule, he does so at his peril. The litigants are entitled to a fair and impartial trial, and, should it appear that by reason of the violation of this rule the rights of the losing party have been prejudiced, it is the duty of the trial court to grant a new trial."

In the case of Behringer v. S. P. Coaches, 13 S.W.(2d) 334, it was said, by section A of the Commission of Appeals, quoting from the headnotes, that: "Trial judge had authority, if not duty, in case of improper argument of counsel to jury, to act with or without objection, exception, or request of opposing counsel." In the same case it was held that objection with respect to improper argument need not be communicated to counsel using it in order to invoke a ruling by the trial judge, since attorneys using improper argument assume the risk.

In the case of Floyd v. Fidelity Union Casualty Co., 24 S.W.(2d) 363, it was said by Section B of our Commission of Appeals, quoting from the headnotes, that: "Improper argument injecting into the case matters dehors record that are inflammatory, and calculated to prejudice rights of losing party before jury, may, in proper case, be complained of on appeal, although objection was urged for first time in motion for new trial."

Appellants also complain of misconduct of the jury, made grounds for their motion for a new trial. The jury were summoned and testified before the court. The juror W. A. Faubion testified: "In the deliberation of the jury before they reached any amount which they finally all agreed on to give the plaintiffs, someone mentioned that they had an idea that the company carried insurance on their trucks and cars. * * * That was about all that was said about the company carrying insurance on its cars. It was just mentioned, and that was all. * * * There was one man said he had a sick wife. * * * I do not know who he was. I do not know his name. * * * It is a fact that I have a sick wife myself, who has some sort of female trouble. I guess it is true that she is affected somewhat in the same way that Mrs. Maunders is, something like that. My wife has been afflicted in that way for several years. * * * There was nothing said about that when I was being examined here as a prospective juror. I did not let the condition of my wife affect me in my decision of the case. It did not have any influence on me. I did not tell anyone about it."

J. F. Bobo testified: "I heard some discussion during the time we were trying to arrive at the amount of damages that we would give as to any insurance company being involved in the case. I do not know whether I can tell just what was said about that, anyhow, some of the jurors spoke up and said something about whether the Trinity Portland Cement Company was carrying insurance. And some of the others said that they expected that they were, that a company that size would be apt to carry insurance. But no one knew how much it would be or anything like that. That discussion was had while the jury was deliberating as to the amount that they would give, it was before they decided what they would

give. * * * They did not know how much the attorneys for the plaintiff would get, but someone said that they usually get 50-50. I would not be positive as to who said that but my best recollection is that it was Mr. Hicks said that. He said something about it, I think. * * * I guess that you could say that it was talked generally amongst the men. Most all of us said something about it. They said they would probably get one-half of it, one-half of what they would get, the attorneys would. * * * After that discussion took place, some of the low men raised their figures. I did raise mine. * * * As to whether or not in raising the amount of my verdict, I took into consideration anything that was said about insurance or attorneys' fees, or anybody's wife suffering, well that would be a hard question for me to answer. If I understand the law I was given, I could not have considered that in the amount that I would want to give her. I would answer that, 'No, that I did not consider that.' It was the other jurymen that led me to raise my amount. * * * I heard one of the jurors say something about his wife being in a similar condition as Mrs. Maunders. This juror was Mr. Hicks. He said that his wife had been suffering for several years with something like Mrs. Maunders had. * * * He said he knew a little something about how a woman suffered, that his wife had for several years. * * * As to whether or not some of the jurors announced that Mrs. Maunders probably would not live more than one or two years, well, it was talked. Some of them said that she might not live over six or seven years. * * * It was Mr. Fiske, I believe, that said that he would not have his wife go through what Mrs. Maunders was going through for $100,000.00."

J. S. Grimmage testified: "They spoke about the insurance, but it was not discussed. They said that that was not any of our business. One fellow asked if they were carrying insurance, and he said that was none of our business. The foreman of the jury said that. He said that it was not any of our business whether they carried insurance or not. After the attorneys' fees was mentioned and after the insurance was mentioned and the sick wife, and after the addition and division, I raised my amount from $10,000.00 to $35,000.00. We had quite a scramble over the amount. We passed that up two or three times. Those things which we have mentioned and which I have mentioned occurred before the amount of $35,000.00 was reached. * * * When the insurance was mentioned the foreman said that we would not take that into consideration. * * * I believe that there was something said by one of the jurors as to the condition of his wife. He said that if it was his wife, he would not have it done for $40,000.00."

Juror J. C. Rogers testified: "There might have been something said there about in-

surance but not before all the questions had been answered, nothing that would have affected a man anyway. * * * I could not even tell you what was said about insurance. * * * I do not remember the insurance matter being mentioned."

The foreman, R. R. Fiske, testified: "There was no discussion about the defendants carrying public insurance on the car that figured in the accident. I recall that someone made the statement, he wondered if there was any insurance, if he carried any insurance, and I told them that that did not matter, that that was none of our business. * * * The question of the insurance and attorneys' fees was raised and mentioned before we reached the amount of their verdict."

D. S. Taylor testified: "There was something said about an insurance company or public liability insurance, while the jury was deliberating. I heard the statement about that. I think that it was said so that the other jurors could have heard it if they had been listening."

The jurors Goodwin, Stewart, and Rippey also testified that they heard remarks about the insurance. The juror Johnson testified that he recalled that there was some mention made by one of the jurors of an insurance company carrying liability insurance on the car of defendant. That one juror said, "I wonder if they carry insurance." Another said, "If they do, it looks as though they would have an insurance attorney up here." Another one said, "Well, you cannot tell, that might be an insurance attorney out there now." That he spoke up and said: "Well, it doesn't seem to me that that is any of our business, we have got to reach a verdict through the testimony that we have heard on the witness stand. And it absolutely stopped the conversation about the insurance. There was not any more said about it." He further testified: "At the time that these mentions were made of the insurance and of the insurance company and what the attorneys would get out of it, we had then answered all of the questions except the question with respect to the amount of the verdict. * * * The amount that I originally decided that the plaintiff ought to have was $20,000.00. That was as low a figure as I ever considered. It was my first idea. There were some jurors that were lower than my estimate. * * * It was after the discussion of and the mention of the insurance and attorneys' fees that the low men raised their figures to the $35,000.00. That was the last thing that we did. We signed the verdict and walked out."

The juror Kostas testified: "I stated that I had a sick wife myself. She has been sick over a year. You know that a person needs somebody to take care of them, and it does not cost less than five dollars a day. * * *

My own experience with my own sick wife was not considered by me while I was considering the case."

G. F. Rippey testified: "I did hear something with regard to the condition of some of the wives. One juror said that his wife was a very nervous woman. * * * I believe that he mentioned that he thought it would be worth $100,000.00 from his own experience with his own wife. I believe it was that he said that he would not have her in that condition for $100,000.00. I am not sure whether that statement was made before we reached the amount of $35,000.00 or after. If it was before, it may be true that some of the lower jurors after hearing that statement raised their original amounts up to $35,000.00."

There are other minor complaints of the proceedings in the jury room not deemer material, and which will therefore not be discussed. It should be added also that while it is true, as appellees insist, that all of the jurors finally testified that they were not influenced by the statements we have above detailed and that on the hearing the trial judge is vested with the power of passing upon the weight to be given to the testimony, yet we think that enough has been said to show that the statements during the deliberations of the jury relating to insurance, attorneys' fees, and of the juror detailing the condition of his wife, were all improper and of a tendency to influence the jury in naming the amount of the plaintiffs' damages. Our rules and decisions undoubtedly contemplate that the verdict shall rest upon the law as given in the court's instructions and the evidence which they have been permitted to hear. All other extraneous matter of a prejudicial character must be excluded. In the case of M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508, 509, Mr. Justice Gaines said: "The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence."

In the case of Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606, where the matter of attorneys' fees was discussed, in a personal injury case, Chief Justice Brown said: "If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside."

The evidence in the case shows that Mrs. Maunders suffered no broken bones, her injuries, according to the testimony of the doctor, being of a nervous character, resulting in a disabling female trouble. The verdict was concededly large, excessive in the judg-

ment of the trial court in the amount of $15,000. And, whatever may be said in justification or excuse, we think that the arguments of counsel we have discussed and the proceedings in the jury room were of a character to require the trial judge to have granted appellants' motion for rehearing. In the case of Moore v. Ivey, 277 S. W. 106, by section A of the Commission of Appeals, it is said, quoting from the headnotes, that: "When misconduct of jury is once shown, and there is a reasonable doubt as to its effect, that doubt must be resolved against verdict." And again quoting from the headnotes: "If, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether improper conduct of jury affected amount of verdict or decision of any other material issue, verdict should be set aside by trial judge; and, if a new trial is not granted, there is an abuse of discretion by trial judge, and reversal becomes duty of appellate court."

In Southern Traction Co. v. Wilson, 254 S. W. 1104, by Section B of the Commission of Appeals, it is said, quoting from the headnotes: "Any verdict of a jury is excessive, where it is agreed to by a juror who bases it in part on improper evidence received in the jury room." And again: "If, from the evidence taken by the trial judge on the hearing of a motion for new trial, on the ground of misconduct of the jury, it is reasonably doubtful as to whether a juror was influenced to any extent in arriving at his verdict by discussion of improper evidence in the jury room, the verdict must be set aside."

The case of Houston, etc., Co. v. Gray, 105 Tex. 42, 143 S. W. 606, was cited with approval in the later case of Bell v. Blackwell, 283 S. W. 765, by Section B of the Commission of Appeals, where it is said, quoting from the headnotes:

"Error requires reversal, if there is any reasonable doubt of its harmful effect, unless it affirmatively appears from record that error was harmless.

"Since error requires reversal if there is any reasonable doubt of harmful effect, finding of actual prejudice is not necessary to authorize reversal."

These are strong expressions of our highest court, and undoubtedly furnish the proper guide for our action.

We conclude that the failure of the trial judge to grant appellant's motion for rehearing constitutes reversible error.

In view of a new trial, we think we should add that appellants presented objection to the form of the issues presented to the jury.

Issue No. 1 reads as follows: "Find from a preponderance of the evidence whether or not the plaintiff, Mrs. Edith Maunders, and

the defendant Russell Morgan, approached the intersection of Ninth Street and Grace Street in Wichita Falls, Texas, on or about January 22, 1929, in automobiles at approximately the same time."

Issue No. 2 reads: "Find from a preponderance of the evidence whether the defendant Russell Morgan operated or drove a motor vehicle upon the public highway within the corporate limits of the City of Wichita Falls, Texas, at a greater rate of speed than twenty miles per hour at the time of the collision, if any, between the plaintiffs' car and the defendants' car."

The remaining issues, adapted to the several grounds of negligence alleged by the plaintiffs, are in the same form. We are not prepared to approve the form in which the issues were submitted. It is not clear, we think, that they are free from objection. It is to be noted that the issues are in the imperative mood and may be said to apply to a negative as well as to an affirmative answer, and perhaps tend to obscure in the minds of the jurors untrained in technical forms, the essential rule that the burden was upon the plaintiffs to establish the material issues presented in their petition by a preponderance of the evidence. A better form, we think, would be: "Do you find from the preponderance of the evidence that," etc.

In such form, with the approved definition of "preponderance of the evidence" as given by the court in mind, we think it would be unnecessary to give, as urged by appellants, a separate charge on the "burden of proof," appropriately applied to the issues.

Other questions, including the action of the court in refusing the peremptory instruction on the ground that the undisputed evidence showed that Morgan was on a mission of his own, will not be discussed or determined, inasmuch as they may not again arise upon another trial.

For reasons, stated, the judgment of the trial court will be reversed, and the cause remanded.

### On Motion for Rehearing.

Counsel for appellees complain very earnestly of our action in considering certain bills of exception alleged to be insufficient, in that they fail to negative supposible facts that will justify the rulings complained of, citing Vincent v. Bell (Tex. Civ. App.) 22 S.W.(2d) 753; Thompson v. Caldwell (Tex. Civ. App.) 22 S. W.(2d) 720; and Houston, E. & W. T. Ry. Co. v. Sherman (Tex. Civ. App.) 10 S.W.(2d) 243, 244. We think a close reading of these cases will disclose distinctions from the case we have before us. It is true that reference is made in one or more of them to rulings on the part of some of our courts of appeal, to the effect that a bill of exception must negative every fact or circumstance that would

justify the ruling of the court complained of in the bill, but as to the complaints mentioned, we take occasion to say that in view of the nature of the subject and of the requirements of our statute relating thereto, this court is not inclined to apply in every case the presumption indulged by the decisions of other Courts of Civil Appeals, above cited in behalf of appellees.

In the case of Whitaker v. Gee, 61 Tex. 218, our Supreme Court held that: "To entitle a party to the revision of the ruling of a court below in regard to the admission or rejection of evidence, the matter must be so presented by bill of exceptions filed in proper time as to enable this court to fully understand and know all facts on which the correctness or incorrectness of the ruling depends."

In Rogers v. Richards, 8 N. M. 658, 47 P. 719, it is said that a bill of exception should embrace, among other things, all the evidence necessary to an understanding of the exceptions and a review thereof.

Article 2237, Rev. Civ. Statutes of 1925, relating to bills of exceptions, so far as pertinent, reads as follows:

"1. No particular form of words shall be required in a bill of exception; but the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain, and no more, and the whole as briefly as possible. * * *

"5. The party taking a bill of exception shall reduce the same to writing and present it to the judge for his allowance and signature.

"6. The judge shall submit such bill to the adverse party or his counsel, if in attendance on the court, and if found to be correct, the judge shall sign it without delay and file it with the clerk."

Let us suppose, for the purpose of an illustration only, that the transcript on appeal discloses error assigned and duly urged, to the effect that counsel for appellee during the trial before a jury made a statement or argument before the court that on its face is manifestly violative of some rule of law or established practice, and of a character presumptively prejudicial to the legal rights pleaded by appellant; and suppose it further appears from a bill of exception in due form that the objectional statement or argument was duly excepted to at the time upon proper grounds and that the objection was overruled, and that the bill has been duly signed and approved without change or explanation by both the trial court and offending counsel as contemplated by the statute.

Under such circumstances, should the reviewing court be required to presume the existence of some possible fact or state of attending circumstances that would render the

objectionable matter without prejudicial effect? As stated, we are not inclined to think so.

In Bell v. Blackwell, 283 S. W. 765, by Section B of our Commission of Appeals, it was held, in substance, that if error appears, harmful effect will be presumed and the judgment reversed unless it affirmatively appears otherwise. This case has been expressly approved several times by our Supreme Court. See Parker v. Bailey (Tex. Com. App.) 15 S. W.(2d) 1033; Floyd v. Fidelity Union Casualty Co. (Tex. Com. App.) 24 S.W.(2d) 363. In such cases the reviewing court is not required to search the record to rebut the presumption. The burden of doing this rests upon the appellee. The offending counsel and the judge who made the ruling complained of must be held to have full knowledge of the circumstances, if any, that will justify the ruling or render it harmless. They also are naturally interested in supporting the ruling and have the final word in the preparation of the bill of exception. The statute specifically requires that "the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain" the ruling. If the complaining counsel fails to embody such circumstances, the offending counsel is given an opportunity by the statute to make or suggest the proper correction. In event of his failure to do so from any cause, the judge, as a condition of his approval, may require the inclusion of the necessary matter or add it in an explanatory note to the bill. The bill thus brings the whole subject before the reviewing court for determination without the necessity of resorting to mere presumptions that may or may not be well founded.

It seems to us the statute contemplates this, and that such a preparation of a bill is best calculated to avoid miscarriages of justice. If it be argued that the complaining counsel is unwilling to accept his bill as amended by opposing counsel or court, the statute gives him the right to a bystander's bill. But every lawyer of experience knows that this remedy is of very questionable benefit. It often is of impossible procurement and resort thereto rarely made with well-founded hope of success. If in any case it be permissible to entertain the inference that the opposing counsel and judge would be influenced to encourage, permit, or favor the omission of necessary explanatory matter to avoid criticism or a reversal of the judgment, no more effective course can be adopted to bring about

such results than to approve the bill without explanation, if the court of review is required to adhere to the rule of presumption now insisted upon in behalf of appellee and indicated by the decisions above cited by his counsel. It seems to us that in view of the requirements of our statute, the nature of the subject and of the duties of an appellate court, if a bill of exception, duly signed and approved by the trial judge and otherwise unobjectionable, is presented for review without explanation, the presumption should be indulged that the court did his duty in approving the bill and that there was no modifying or justifying explanation to be made. We are not unmindful of the rule of decision to the effect that all presumptions are in favor of the trial court's action. But this rule we think is of proper application only where the matter objected to, as presented in the bill, is not plainly objectionable, and hence in need of explanation in order to make manifest the error and its prejudicial character. Where, however, as already indicated, the error and prejudicial character prima facie appears, the rule of decision referred to should be applied, not to the judge's action in overruling the objection, but to his act in signing the bill without the necessary explanation.

However, in view of a press of other questions in other cases and because not thought to be of controlling importance in arriving at our final conclusion, we will not further discuss the question of the proper application of the rule appellee now so insistently urges. We think it sufficient to further say that on original hearing we thought in some instances the bills in this case were distinguishable from those presented in the cases cited in behalf of appellee, and in other instances that the rule as insisted upon was without application. We think it fairly apparent from a reading of our original opinion that many of the criticisms therein made of the proceedings below were more for the purpose of calling attention thereto on another trial than for the purpose of determining whether the error or apparent error pointed out was such as to require a reversal of the judgment.

On the whole, we continue to think that sufficient error was properly presented to require us in the interest of justice to reverse the judgment and remand the cause for another trial.

The motion for rehearing is accordingly overruled.