### ARMSTRONG v. MISSOURI–KANSAS-TEXAS–R. CO. OF TEXAS.

#### No. 14240.

Court of Civil Appeals of Texas. Dallas.

Oct. 6, 1950.

Rehearing Denied Nov. 3, 1950.

Gullett & Gullett and Rawlins & Briggs, all of Denison, for appellant.

Freels & Elliott, of Sherman, and G. H. Penland, of Dallas, for appellee.

944

YOUNG, Justice.

The suit in District Court was by Armstrong against appellee Railroad, invoking provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries allegedly suffered by him on March 10, 1948 while employed by appellee in capacity of section laborer assigned to the duty of cleaning out waste accumulations in oil traps.

Among the acts of negligence pled by appellant with issues in support were the following: (Issue 2) Failure of defendant to install a sufficient number of handholds on the oil trap lid for purpose of lifting the same; and (Issue 23) that plaintiff was furnished with an inadequate shovel with which to do his work; both issues having affirmative answers with findings of negligence and that such was a proximate cause of injury. The jury acquitted plaintiff of all charges of negligence, in which connection the further jury issues and answers may well be summarized: (Affecting plaintiff) That there was no negligence touching his failure (1) to utilize the services of co-worker Jones in raising the lid; (2) in his failure to call upon Jones for assistance; (3) in his failure to block up the lid with shovel before attempting to raise it; (4) that he did not fail to remove the ice from middle trap lid; (5) nor to correctly judge his own ability to lift the lid in question. (Affecting defendant) There was no negligence in failure to furnish plaintiff with pinch bar, pick, or winch; or in not installing a counterbalance on trap lid; or in not constructing middle lid of trap so that it might be lifted in sections; that plaintiff had a reasonably safe place to work; defendant furnishing him with defective shovel, but such was not negligence; and that the occurrence was not an unavoidable accident. Damages were fixed at $38,346 inclusive of medical and hospital expenses past and future. Plaintiff duly filed motion for judgment on the jury verdict, defendant moving for judgment non obstante veredicto, which latter motion upon hearing was sustained with result of plaintiff's appeal from the adverse judgment rendered.

The factual background explanatory of appellant's work and duties at time of injury is graphically shown in reply brief of appellee, from which we restate the following: At Ray Station, Denison, was located the Company roundhouse where engines were drained of oil, grease, silt, sand, and grime, which waste material went into a sewer line; and, passing through a series of excavations known as oil traps, finally emptied into adjacent Corn Creek. These traps were designed to collect and retard passage of waste oil and sludge and thus prevent the same from draining into and polluting said creek. They were located at varying distances from the roundhouse, the trap and locus of plaintiff's alleged injury being about 200 feet southwest, in the general vicinity of which was a large earthen tank or settling basin. Each trap, an excavation 10 or 12 feet deep and 4 feet wide, was constructed in sections,—either two or three; the trap in question being of three sections and some 20 to 25 feet in length, lying east and west. The end sections of this trap were each covered by two doors or lids opening from the center outward; the middle trap (place of injury) was covered by only one door, approximately 4 by 6 feet in size, of creosoted bridge material and weighing according to testimony around 123 lbs. These doors had handles of rubber hose, east and west doors equipped with two handles, the middle door with one, all lying flat to ground and working on hinges. They were opened by simply lifting and laying lid back, raising up just like the doors on an old-fashioned cistern. They were serviced by a two-man crew, on this occasion by plaintiff and one F. E. Jones. The routine was for one man to descend by way of a ladder, skimming off the oil standing on top of water into a bucket which was hauled up by a rope; then strained of cigar and cigarette butts, matches, etc., into a 55-gallon wheeled drum, moved to an oil sump and poured out. The mud and sludge settling on trap bottom was shoveled into a five-gallon can; and when pulled to the surface was placed in a wheelbarrow and rolled to a nearby dump where the contents were emptied and burned.

Plaintiff, 30 years of age, weighing some 190 lbs., and 6′ 5″ in height, was accustomed to hard manual labor prior to injury. He testified to the occurrence of March 10, 1948 as follows: It was his initial duty of that morning,—weather cold, with surface ice. Accompanied by Jones, he went first to west trap, opening doors, descending and cleaning out the same in manner already described. They then proceeded to middle trap, first chipping ice off from around the opening with shovels; Armstrong then reaching down, grasping door handle and lifting up; describing the operation in this manner: "I got the door I'd say from six to eight inches high, and this pain hit me in the back, and the door went down and I went with it." (The resulting injury was later characterized by his medical witness as a ruptured disc, vertebral.) After an interval and with continued pain in back, plaintiff stated that they got the lid up by further scraping away of ice, then inserting shovel blades under lid and prizing, Jones lifting by inserting fingers under edge of lid.

Armstrong had been working on the oil trap job for some two years, the doors being customarily opened by the man getting there first, one grabbing a door and opening it, the other moving on to lift the next. He had done a great deal of the trap door lifting, being well familiar with their size and weight, knowing that the middle door was "plenty heavy"; testifying that he would usually lift it up to where his helper could take hold and "push it up with me." While engaged on the particular job, as plaintiff stated, he worked independently of his section foreman, knowing what was to be done each morning and going ahead with it. When he first attempted to lift the door his fellow-employee (Jones) was standing by, plaintiff not remembering whether he had requested Jones to assist in the raising.

Jones testified that they went first to this middle trap, both scraping ice away with shovels, prizing under lid to loosen it, putting shovels aside, Armstrong then attempting to raise the door by means of handle, but failing as already narrated; that on a second attempt they prized the door up with shovels, Jones leaving his in place, both men then lifting the lid up and shoving it back; the cross-examination here being as follows:

"Q. Was there any reason why you shouldn't have done that the first time you started up with it? A. I don't know of any. * * *

"Q. Was there any reason why that couldn't have been done the first time? A. No, we just overlooked it.

"Q. Mr. Armstrong didn't say anything to you or anybody else about doing it that way the first time, did he. A. No, sir."

Jones further testified that Armstrong was the head man and oldest on the job of oil trap cleaning, on each occasion directing the work to be done.

Appellant's points (five in all) predicate error on action of the trial court in overruling his motion for judgment in face of jury issues 2 (failure of appellee to furnish a sufficient number of handholds on the trap lid) and 23 (providing inadequate shovel), such act and omission on part of defendant constituting negligence and proximate cause of injury. Appellee in turn presents cross points wherein assertedly prejudicial argument of plaintiff's counsel is briefed, also complaining of excessiveness of verdict and error of court in ruling that the cause is governed by the Federal Employers' Liability Act, and consequent refusal of defensive issues 3, 4, and 5.

Even on the assumption that provisions of above Federal Act are available to plaintiff, liability thereunder is not shown merely because of an injury arising in performance of duty. "To establish a cause of action against Defendant under the Federal Employers' Liability Act, Plaintiff had to prove that Defendant was negligent respecting him and that this negligence was a legal cause of his injury"; Gulf, Colorado & S. F. Ry. Co. v. Waterhouse, Tex. Civ.App., 223 S.W.2d 654, 658; and in Texas our Supreme Court lays down the following basic rule: "Negligence rests primarily upon two elements: (a) reason to anticipate injury, and (b) failure to perform the duty arising on account of that anticipation. * * * Although injury may

result from a person's act or omission, yet, if the actor could not have reasonably foreseen the resultant injury, or injuries, similar in character, he is not to be held responsible therefor." Great Atlantic & Pacific Tea Co. v. Evans, 142 Tex. 1, 175 S.W.2d 249, 251.

Appellee's section foreman, Shiflett, testified to no prior complaints of inability to get trap doors up, other employees testifying to having experienced no difficulty in raising the middle door and of normally doing so with one hand and unassisted. On the morning in question appellant had full knowledge of the surface ice on traps and was not acting under emergency or in response to any threat or command; on the other hand, being head of the two-man crew. The circumstances incident to plaintiff's injury are not disputed; and, viewing same even most favorably and from his own standpoint, we are still inevitably led to the conclusion of no actionable neglect on the part of defendant upon which any basis of recovery can be sustained. The fact that there was only a single handhold on middle door did not preclude crewman Jones from assisting plaintiff in raising it, as is tacitly admitted by Armstrong on cross-examination:

"Q. Where did he (referring to Jones) catch hold of the lid? A. He prized it with this shovel and got his fingers under the lid and helped me pull it up.

"Q. In other words, he levered it up with the edge of the shovel and put his fingers under the edge, and you took hold of the handle, and then the two of you lifted it and pushed it back? A. Yes, sir.

"Q. Did you ask Mr. Jones to help you do that before you tried to lift it the first time? A. Mr. Jones tried. He scraped on the thing with the shovel—

"Q. I am asking you did you ask him to do that before you tried to lift it the first time? A. I don't remember whether I asked him or not."

Nor is there any showing that, if given an additional handle, this door could have been raised by any other method than that which was actually employed (prying loose the surface ice, blocking with shovel and a joint lifting).

■■ Armstrong knew of the icy conditions and that the particular lifting would be attended with more than usual difficulty. Was defendant duty bound to do more than furnish additional help against such a contingency? We think not. The salutary rule of foreseeability and anticipation of injurious consequences (proximate cause) is likewise applicable to injuries arising under the Federal Employers' Liability Act. Here, and as appellee points out, there was no way for appellee to have anticipated that appellant, being the best judge of his own strength, and finding the door too heavy, would attempt to lift it, when he had only to call upon the assistance at hand; and when Armstrong (correctly judging his own ability to lift the door, as the jury has found) could not have thus foreseen or anticipated injury to himself, how can it be said by any reasonable inference that appellee should have done so? Under facts quite analogous in Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W. 2d 977, 979, and despite jury findings acquitting Coker of negligence, our Supreme Court held that: "The employer is not liable when he has provided help and injury results from the act of the employee in voluntarily proceeding to do the work without assistance. The same is true when sufficient help is nearby and available and the employee does the work alone without seeking or asking for assistance."

■■ Neither can it be reasonably inferred under a most favorable view of the testimony that in furnishing plaintiff with an inadequate shovel defendant was guilty of negligence proximately resulting in these injuries. Nothing in the testimony of Armstrong is indicative of any inadequacy of shovel when loosening the ice prior to injury; on cross-examination stating that he did not use a shovel at all; simply standing by while the fellow-employee scraped ice from the lid,—plaintiff then attempting to lift it; Jones testifying to no unsuitability of shovels that he could observe. The blades were worn down, but, as this

witness stated in substance, these tools could be used for all the purposes of that job. Aside from this, it is our opinion that the jury finding of inadequate shovel is in irreconcilable conflict with their answer to Issue No. 21 that the Company *was not* negligent in furnishing appellant with a defective one.

■ We now turn to a consideration of defendant's several cross assignments: As bearing on appellant's physical condition and impaired earning capacity following injury, it was developed on cross-examination that he went to work for Southern Packing Company along about Thanksgiving in 1948 after physical examination by a Dr. McFarland. There he worked in the sausage room a greater part of the winter, then helping to build large wooden boxes for use by customer stores, also hand-trucking and stacking of cheese. During the latter part of such employment he was sent to Dr. McFarland following a complaint of some sort of injury to shoulder due to lifting. Fellow-employees Hodge and Lively were referred to in his testimony, along with the doctor just mentioned, none of whom were shown to be under control of the Railroad Company. In this situation and in opening argument, appellant's counsel made the following statement: " * * * Why didn't they bring somebody from the ice house down here if he was lifting all this stuff and doing this hard work? Why didn't they bring Dr. McFarland over here? They knew about him, and I presume they talked to him. Why didn't they bring him over here? Gentlemen, why? * * * Freels: Your Honor, we object to the argument of counsel concerning the employees of Southern Ice Company and Dr. McFarland, for the reason that there is no showing whatsoever that these witnesses are under control of this defendant. Court: Sustained. The jury won't consider that argument."

■ Aforesaid argument was obviously improper and prejudicial to an extent that the curative effect of the court's instruction to disregard it may well be doubted. "The rule is now settled, in this state, that where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted." Floyd v. Fidelity Union Casualty Co., Tex.Com.App., 39 S.W.2d 1091. See also Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App., 221 S.W.2d 936; Morgan et al. v. Maunders et ux., Tex.Civ.App., 37 S.W.2d 791; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; San Antonio Public Service Co. v. Smith, Tex.Civ.App., 57 S.W.2d 179; Traders & General Insurance Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650; Southern Underwriters v. Dykes et al., Tex.Civ.App., 145 S.W.2d 1105. The quoted rule is particularly applicable in view of the jury's ample award, their finding on future medical expense being substantially in excess of the amount sued for ($2,000). If necessary to this opinion, above cross point will be sustained, necessitating another trial. However, appellee's cross points 2 and 3 complaining further of argument on part of adverse counsel are overruled as not disclosing error deemed reversible.

■ Our conclusions hereinabove reached render unnecessary, we think, a consideration of appellee's contention that the jury verdict was so grossly excessive and unreasonable as to be indicative of passion and prejudice; and we are brought to cross point 5 complaining of error in the court's ruling that appellee's defenses were concluded by the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51. As amended in 1939 the law reads in part: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." While the main purpose of defendant's sewer line and traps was to avoid pollution of Corn Creek, in compliance with State laws, both civil and criminal, Art. 698b, Vernon's Ann. P.C.; article 4444, Rev.Stat. 1925, yet, ac-

cording to Shiflett, appellee's foreman, some three or four barrels of crude oil were salvaged each day for later use by Company engines in interstate commerce. "The weight of authority is to the effect that the amendment (1939) should be liberally construed so as to extend the protection of this act to all employees, any part of whose duties furthers or affects interstate commerce * * *." Agostino v. Pennsylvania R. Co., D.C., 50 F.Supp. 726, 729. It was the clear intent of Congress "to include any employee who performs services which in any way further or affect interstate commerce * * *." Edwards v. Baltimore & O. R. Co., 7 Cir., 131 F.2d 366, 369. For a recent Texas construction of the Act, see Gulf, Colorado & S. F. Ry. Co. v. Waterhouse, supra, where a section hand, in cutting brush on the railroad right of way, was held engaged in interstate commerce. While the question at hand is indeed close, we are not prepared to say that the duties of appellant at time of injury were not within purview of the Act. The cross point is therefore overruled.

It being our opinion, however, that the trial court did not err in its rendition non obstante veredicto for defendant, all points of appeal are overruled with affirmance of judgment in accordance.

### On Rehearing.

Appellant strenuously assails our finding of 123 pounds as weight of middle trap door. The figures represent actual weight thereof upon Company scales, according to testimony of witness Shiflett. While two witnesses gave estimates as to its weight (some 200 pounds), it was the thought of the writer that any estimation of weight should yield to unchallenged testimony establishing the particular or actual weight. In fairness to appellant, however, we quote the further testimony in this connection:

"Q. About how much does that thing weigh, Mr. Armstrong? A. I judge in the neighborhood of 200 pounds.

"Q. * * * And how much does it weigh, in your judgment, Mr. Jones? A.

Well, guessing, I would say it would weigh around 200 pounds."

Otherwise, and upon full consideration of points presented, the motion is in all respects overruled.